**Fred C. MINTERT, Plaintiff,**

v.

**Farwell H. GASTORF, Leona C. Gastorf and Carolyn Lasley, Respondents.**

**No. 52409.**

Supreme Court of Missouri,
Division No. 2.

July 10, 1967.

Thomas M. Gioia and Robert H. Dierker, St. Louis, for appellant.

Edwin Rader, Clayton, Warmann & Scheiter and Martin H. Schriewer, St. Louis, for respondents.

STOCKARD, Commissioner.

Fred C. Mintert, 85 years of age at time of trial, brought suit to cancel certain quitclaim deeds to real estate whereby he conveyed title to a "straw party," and that party then conveyed title to Farwell and Leona Gastorf, husband and wife, reserving a life estate in plaintiff with power of sale.

Farwell Gastorf was plaintiff's stepson, and plaintiff alleged in his petition that Farwell and Leona occupied a confidential relationship with him, and that by fraudulent means and undue influence caused him to execute the quitclaim deed while believing that he was executing a will. The trial court found that a confidential relationship existed, but found all other issues for the defendants, and plaintiff has appealed.

Certain background information is necessary before we set out the circumstances of the execution of the quitclaim deeds. In 1934 plaintiff married Lydia Morrison, the mother of Farwell. Although plaintiff testified that in 1947 he had built a house, using "mine and Lydia's

money," on the property in question, title to the property was conveyed from Ruth Sobelman, a daughter of Lydia, to plaintiff and his wife by the entirety in 1953. For about three years before her death on September 4, 1962, plaintiff's wife had some "mental trouble," and for the last year and a half she was in an institution. During this time plaintiff was in a hospital on more than one occasion. In June 1959, when plaintiff was hospitalized he executed a power of attorney on a form furnished by the hospital which the bank refused to recognize because not notarized. He later executed a power of attorney prepared by Richard C. Warmann, an attorney, at the request of the bank, and which plaintiff apparently executed before a representative of the bank. This power of attorney authorized Farwell to make withdrawals from a bank account maintained by plaintiff. At least when plaintiff was hospitalized, and apparently at other times, Farwell paid plaintiff's monthly bills, using plaintiff's money, and when plaintiff's wife was in the institution plaintiff would give Farwell her social security check, or cash in that amount, and Farwell would pay the institutional bills of "better than $200 a month." Plaintiff testified that he did not recall signing the power of attorney, that he knew "nothing about it," and although he admitted that Farwell paid bills from the bank account he said he did not know how he got the authority to do so. Farwell testified that in 1962 after plaintiff's wife died, he and plaintiff went to the bank and plaintiff "had my name put on [the account] with his." Plaintiff denied that he went to the bank with Farwell, and he testified that he did not know until 1965 that Farwell's name was on the account. However, plaintiff makes no contention whatever, not even an intimation, that Farwell misappropriated any of the money or used any of it improperly or for an unauthorized purpose.

In 1960 plaintiff and Farwell went to the office of Mr. Warmann and consulted with him relative to obtaining from Ruth Sobelman some "papers" which belonged to plaintiff, which included, according to Mr. Warmann, "his insurance policies and supposedly his will, cemetery papers, that sort of thing." Mr. Warmann talked to Ruth Sobelman on the telephone, and apparently the matter was satisfactorily concluded. On May 31, 1961, Mr. Warmann had a conference with plaintiff relative to the preparation of a will. On June 7 plaintiff returned to Mr. Warmann's office and executed the will. Mr. Warmann and his law partner signed as witnesses. By the terms of that will plaintiff left all of his property to his wife, and stated in the will that he had named Farwell as beneficiary of certain life insurance and that he had named him "as the joint owner of certain other property." He also provided that if his wife predeceased him, Ruth Sobelman should receive five dollars, and that Farwell should receive "all of the rest, residue and remainder" of his estate, and that Farwell should serve as executor without bond. Mr. Warmann testified that in conferring with plaintiff about the terms of the will he had recommended to him that he change the beneficiary on an insurance policy from his wife to Farwell and to have Farwell made a joint owner with plaintiff of a small savings account. It does not affirmatively appear, but apparently the above reference in the will was to these two matters. Plaintiff testified that he did not remember that Mr. Warmann wrote a will for him in 1961, that he could not remember signing a will prior to October 1962, and that he had never seen that will, if he had one. However, on redirect examination he inferentially admitted he had signed a will in which he gave Ruth Sobelman five dollars and the rest of his estate to Farwell, but he said that when he gave Ruth Sobelman five dollars "it wasn't my last will."

With this background we now turn to the evidence concerning the execution of the deeds which plaintiff seeks to cancel by this suit.

Leona Gastorf testified that shortly after plaintiff's wife died he was at their house and he stated to Farwell that since his wife was deceased "they ought to have [the house] put in their names," and that "they" told her to "call the lawyer tomorrow and make an appointment." Mr. Warmann testified that Leona called him on September 23, 1962, and after refreshing his recollection from his notes, he said that she told him that "they" wanted "to put title in joint names." His recollection was that he had "explained to her at that time that there was a better way." Leona was of the opinion that she did not state the purpose of the visit but only asked for an appointment. In any event, plaintiff, Farwell and Leona came to his office. Mr. Warmann testified that as the result of his conversation with Leona, he prepared an affidavit for plaintiff to sign pertaining to the ownership by plaintiff and his wife of the property by the entirety and that his wife was deceased, and also prepared two quitclaim deeds. One deed was from plaintiff to Mr. Warmann's secretary as a straw party, and the other was from the straw party to Farwell and Leona, but "subject to an estate * * * to [plaintiff] for and during his natural life, with power * * * to use, occupy and enjoy the same and to collect the rents and income thereof, for his sole and exclusive use, and with the further power, which is hereby expressly granted to [plaintiff] to sell, mortgage, convey or in any other way dispose of the fee simple title to the said premises or any part thereof, and to rent or lease the same or any part thereof for any period, all in the sole discretion of said [plaintiff] and by his sole deed or other instrument."

Mr. Warmann testified that plaintiff came to his office on October 5, 1962, in company with Farwell and Leona, that he explained to plaintiff the purpose and effect of the deeds, and that there was a note in his file to the effect that plaintiff at first did not understand about the deed to the straw party. He further testified that

he pointed out to plaintiff that because of his wife's death there was no reason to change the will executed in 1961, and he stated that when plaintiff was in his office he did not tell him that the deed he had prepared for plaintiff was a will. He could not remember, and his notes did not reflect, who was present at the time the deeds were signed, but after his explanation of the transaction plaintiff signed the affidavit and the deed to the straw party, and Mr. Warmann notarized each instrument. There was some discrepancy between the recollection of Mr. Warmann, who indicated that he had no independent recollection but was relying on his file notes, and the recollection of Farwell and Leona as to the meeting at Mr. Warmann's office. According to Farwell and Leona they took plaintiff there, Mr. Warmann took notes on what was wanted, plaintiff went back later and alone, and they were not present when plaintiff signed the affidavit and the deed. According to Mr. Warmann, Leona had told him by telephone that they wanted the house in joint names, that he told her there was a "better way," and that he obtained a description of the property and had the affidavit and deeds prepared when he first met with plaintiff to explain the transaction to him. In any event, after the affidavit and the deeds were signed, Mr. Warmann had them recorded, and he then sent them by mail to plaintiff with a statement of his fee and the cost of recording. On November 9, 1962, plaintiff went to Mr. Warmann's office alone and paid, according to plaintiff $23.00, and according to Mr. Warmann $30.25.

Plaintiff admitted that he went to Mr. Warmann's office in October 1962, and although plaintiff admittedly had previously consulted with Mr. Warmann at least twice, he testified that in October 1962 was the first time he had met Mr. Warmann and that he did not know him personally. He then, by inference, qualified that statement by saying that Mr. Warmann may have had an office somewhere else, but in October

1962 was the first time he had been in that office. Mr. Warmann testified that his office address had been the same since 1956. Plaintiff also testified that he told Mr. Warmann that he wanted to make a will leaving all of his property to Farwell, and he testified that at that time he was of the opinion that he did not then have a will, or if he had one he had forgotten about it. He denied that he wanted to make a deed, or that Mr. Warmann had explained to him the purpose and effect of the deeds. He first testified that he did not know if he signed a paper in Warmann's office, but then said he "might have signed a paper," and later in response to leading questions admitted that he signed a paper but stated that he thought it was a will. Although plaintiff returned to Mr. Warmann's office on November 9, 1962 and paid the statement sent to him by mail which plaintiff admitted he received, he testified that he never received the letter from Mr. Warmann and had never seen the deeds after they were signed. He also said that he first learned about the deeds in 1965 when he saw a tax bill and learned that Farwell's name was on it.

◼◼ In this equity action we must determine the cause *de novo*, weigh the competent evidence introduced upon the factual issues, and reach our own conclusions based upon that evidence, although we defer to the finding of the trial court where there is conflicting oral testimony involving a determination of the credibility of witnesses who appeared before it. Jackson v. Tibbling, Mo., 310 S.W.2d 909, 914. We must also keep in mind that the cancellation of a deed is the exercise of the most extraordinary power of a court of equity, and this power ought not to be exercised except when clearly justified from a consideration of all of the evidence in the case. Hamilton v. Steininger, 350 Mo. 698, 168 S.W.2d 59; Walton v. Van Camp, Mo., 283 S.W.2d 493, 500.

◼ The trial court found that a confidential relationship existed between plaintiff and Farwell Gastorf and his wife, and we agree with that finding. As to what constitutes a confidential relationship in a situation such as this, see Hedrick v. Hedrick, 350 Mo. 716, 168 S.W.2d 69, 74; Walton v. Van Camp, supra; Clark v. Powell, 351 Mo. 1121, 175 S.W.2d 842; Restatement of Restitution, § 182. It is plaintiff's position that when a confidential relationship is established there then arises a rebuttable presumption of undue influence, and that the burden of rebutting that presumption was not met by Farwell and his wife in this case. The same contention was made in Walton v. Van Camp, supra, and it was there said: "However, in Loehr v. Starke, 332 Mo. 131, 56 S.W.2d 772, 778, this court en banc stated that 'it is not the rule in this state that a mere confidential relation raises a presumption of undue influence.' See also Lastofka v. Lastofka, supra [339 Mo. 770, 99 S.W.2d 46]; Hamilton v. Steininger, supra; and Horn v. Owens, supra [Mo., 171 S.W.2d 585]. Undue influence will not be inferred or assumed from the mere showing that a confidential relationship existed between the grantor and grantee, but the burden is upon the one challenging the deed to adduce facts and circumstances from which it may be inferred undue influence was exercised. Lastofka v. Lastofka, supra; Hamilton v. Steininger, supra; Horn v. Owens, supra. If these facts and circumstances are shown, they are, of course, rebuttable, and the grantee of the deed, or those claiming under him, may show that the grant was not the result of undue influence but was the voluntary act of the grantor. Patton v. Shelton, 328 Mo. 631, 40 S.W.2d 706. Therefore, when facts and circumstances are shown from which undue influence may be inferred, and there is evidence to rebut this inference, it becomes a question for the trier of fact based upon all the evidence whether the influence is undue in that it arose to the mark of persuasion, coercion, force or deception as to break the will of the person overinfluenced and put in its stead the will of another. Hedrick v. Hedrick, supra; Horn v. Owens, supra."

For the purposes of this opinion we shall assume that plaintiff has presented facts and circumstances, one of which would be the existence of the confidential relationship, from which undue influence could be inferred. Of course, as stated above, these facts and circumstances are rebuttable, and even though we admit the existence of the confidential relationship, it is a question for the trier of fact (at this stage of the case, this court, subject to the deference to be shown to the findings of the trial court on the issue of credibility), based upon all the evidence whether undue influence brought about the execution of the deeds.

■ We are first impressed by the fact that at the time of trial plaintiff was eighty-five years of age, and he definitely was suffering from loss of memory or he was not telling the truth, and we believe it was the former. There is no question but that he executed the power of attorney designating Farwell as his agent. There also is no question that he executed his will in 1961, and that prior to October 1962 he had on at least two occasions conferred with Mr. Warmann. Yet he testified that he could not remember signing the will or the power of attorney, and that he did not know Mr. Warmann. He testified that he went to see Mr. Warmann in October 1962, and that Farwell and Leona took him there, with the intent to make a will by which he would leave everything to Farwell. However, at that time he had a will, and as far as shown by the record it is still in existence, by which that precise result was accomplished except for the relative insignificant provision that five dollars should go to Ruth Sobelman. In the face of this inconsistency in purpose, as developed from plaintiff's testimony, and his unreliable memory, undoubtedly resulting from his age, we have the clear, cogent, and convincing testimony of Mr. Warmann, supported by his file notes, which show that the purpose and intent, not only of plaintiff but of all concerned, was to effectuate a status leaving the use and control of the property in plaintiff during his lifetime, and at the death of plaintiff, if the property had not previously transferred by plaintiff, to have title in Farwell and his wife, both trusted friends who had promised to take care of plaintiff during his lifetime, and whom plaintiff admitted were performing this promise. There is no evidence of fraud or undue influence on the part of Farwell or Leona; at most there are shown facts and circumstances from which it could be inferred that there was an opportunity to exercise undue influence if they had been so inclined. But, mere opportunity alone, or mere suspicion of undue influence, unsupported by evidence showing its actual existence, is not sufficient to invalidate a deed. Hamilton v. Steininger, supra; Walton v. Van Camp, supra at p. 502 of 283 S. W.2d. To sustain plaintiff's contention would necessarily require a finding of a conspiracy and misrepresentation on the part of the attorney in that he prepared the deeds and presented and represented them to plaintiff as a will, and there is nothing to justify such a finding.

■ Assuming, as we have, the facts and circumstances in this case are sufficient to authorize an inference of undue influence, we then have a question for the trier of fact, and when we review the entire record and take into consideration all the evidence and circumstances, we must and do conclude that the evidence does not establish such acts or conduct on the part of Farwell or his wife which would require or even justify the relief requested by plaintiff on the grounds of fraud or undue influence.

The weight of the competent and credible evidence is strongly in accord with the findings of the trial court. The judgment is affirmed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.