**Ruth REEVES, Elmo Guilford and Mary Sybert, Appellants,**

v.

**Louis BOONE and Kenneth Guilford, Respondents.**

**No. KCD 30527.**

Missouri Court of Appeals, Western District.

Oct. 29, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 3, 1979.

Application to Transfer Denied Jan. 15, 1980.

---

Holliday & Holliday, Harold L. Holliday, Jr., Kansas City, for appellants.

Cleaveland, Macoubrie, Lewis & Cox, Kenneth R. Lewis, Chillicothe, for respondents.

Before WASSERSTROM, C. J., Presiding, and WELBORN and SMITH, Special Judges.

WELBORN, Special Judge.

Action by three children to set aside deed by mother of family farm to her other two

children. Trial court denied relief. This appeal follows.

Dan and Ruth Guilford, husband and wife, lived on a 79-acre farm in Livingston County for more than 40 years. They had five children, plaintiffs Elmo Guilford, 60 years of age at time of the trial of this case, Mary Sybert, 58, and Ruth Reeves, 37, and defendants Lois Boone, 53, and Kenneth Guilford, 39. All of the children except Kenneth had left the farm by 1959. Kenneth was never married and, except for two years in military service, had lived on the farm with his parents all his life.

Dan Guilford died January 1, 1973. His widow, Ruth, was 74 years of age at that time. According to plaintiff Ruth Reeves, her mother suffered a stroke in November, 1972 and was thereafter unable to do her household chores as she had done previously. In December, 1972, "She still wasn't herself."

Following her husband's funeral, the mother went to her daughter Lois's house in Chillicothe. According to Lois, she was aware that her mother at that time had circulatory problems for which she took medication. She said that her mother had not had a stroke in November, 1972 although her mother did have her "first spell" with her circulatory problem at that time. Lois stated that about a week after her father's death, a severe ice storm struck the farm. The house had no indoor plumbing and it was her and her husband's idea for her mother to live with her while Kenneth build an indoor bath at the farm house.

According to Lois, in March, 1973, she took her mother to the office of attorney Robert Frith in Chillicothe. Her mother had the deed to the farm. She gave it to Frith and told him that she wanted to make a "joint deed with me and Kenneth on there with her, but she wanted that place as long as she lived and then she wanted it to go to us because she knowed who would look after her and she got to places she needed to go when she needed to get there." According to Lois, her mother asked Frith about the necessity of recording the deed and Frith told her that it did not need to be recorded as long as the deed was delivered to Lois and she knew where it was.

On March 8, 1973, Lois and her mother returned to Frith's office and the deed here under attack was executed. It conveyed the farm to the mother, Lois and Kenneth as joint tenants with right of survivorship. Her mother handed the deed to Lois and told her to take care of it. Lois kept the deed in her dresser drawer. None of the other children except Kenneth was told of it. The deed was filed for record March 11, 1977, the day after Ruth Guilford died.

Ruth had returned to the farm in April, 1973. According to Lois, her mother was anxious to return to the farm but waited until the bathroom had been completed. Kenneth said that, after she returned to the farm, his mother took care of the house, cooked the meals and washed the dishes.

Suit to set aside the deed was filed May 10, 1977. (The suit also involved some bank accounts but no complaint has been made regarding the trial court's judgment in that respect.) It alleged that the deed was the product of undue influence exerted by Lois and Kenneth on their mother. At the trial, plaintiff Ruth Reeves testified for plaintiffs and Lois and Kenneth were also called by plaintiffs and testified. At the close of plaintiffs' case, defendants moved for a directed verdict. The motion was sustained, the court concluding: "There was not sufficient evidence produced to support a finding of undue influence or to support a finding of lack of capacity of the grantor." Appellants here complain that such finding was "contrary to the weight of the evidence and contrary to the law of the State of Missouri."

Appellants' argument here is premised on the theory that in reviewing the trial court's judgment, the evidence must be viewed in the light most favorable to appellants, giving them the benefit of all reasonable inferences reasonably deducible therefrom. Appellants rely upon cases applying such rule where a verdict has been directed in a jury case. Their cited cases, *Blackburn v. Katz Drug Company*, 520 S.W.2d 668 (Mo.App.1975); *Black v. Kansas City South-*

*ern Ry. Co.*, 436 S.W.2d 19 (Mo. banc 1968); and *Moore v. Eden*, 405 S.W.2d 910 (Mo. 1966), are of that nature. This was a court-tried action in equity and the authorities relied upon by appellants are inapplicable. " * * * [T]he effect of defendants' motion here was simply to submit the case for decision on its merits, and the trial court had the right to weigh the evidence and decide the case against the plaintiffs." *Lee v. Smith*, 484 S.W.2d 38, 42[3] (Mo.App. 1972). Review of such decision is in accordance with the rules stated in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976); *Brassfield v. Allwood*, 557 S.W.2d 674, 677–678[6, 7] (Mo.App.1977); *Fix v. Fix Material Co. Inc.*, 538 S.W.2d 351, 355[1–4] (Mo.App. 1976).

Basic to appellants' contention here is their position that the evidence established a fiduciary relationship between respondents and their mother. They point to evidence that both respondents, at their mother's request, wrote out checks on their mother's bank account which their mother signed. Kenneth said that he did so "a few times but I don't know how many times." Lois said that she did so two or three times while her mother was living with her. Kenneth acknowledged that his drawing the checks evidenced that his mother trusted him. He denied, however, that he handled his mother's banking business for her. Certainly the activities of the respondents in this regard did not amount to a complete assumption by them of control over their mother's financial affairs such as existed in *Bolin v. Anders*, 559 S.W.2d 235 (Mo.App. 1977), cited by appellants, where this court concluded that a confidential relationship, coupled with facts and circumstances showing undue influence, justified setting aside deeds.

Appellants point to a handwritten note, dated April 19, 1974, in which his mother stated that she wanted Kenneth "to have this place as long as he wants to live here * * * for he sure been good to care for me comes to the house every two hours to see if I am all right." According to Kenneth, his mother told him that, if

anything happened to her, there was a letter under the rug in the bathroom and that he was to get it and read it. He first read the letter the day of his mother's funeral. Obviously this letter does express the appreciation which his mother had for Kenneth's attention to her. However, bearing a date more than a year after the deed, it would not evidence a confidential relationship as of the date of the deed, the crucial time in this case.

Appellants also point to the fact that, in the case of Lois, her mother came to live with her, Lois took her mother to see the attorney and was present when the deed was executed. These facts, coupled with the aforementioned activity on the part of Lois in assisting her mother with checks, do not compel a finding of the existence of a confidential relationship.

Even if a confidential relation had been proved, standing alone it would not have entitled appellants to relief. The mere existence of a confidential relationship does not give rise to a presumption of undue influence. *Mintert v. Gastorf*, 417 S.W.2d 101 (Mo.1967); *Bolin*, 559 S.W.2d at 241[3, 4]. Before appellants would be entitled to relief, they must have produced direct or circumstantial evidence of the exercise of undue influence on the part of respondents. *Mintert*.

The cases recognize that undue influence is seldom susceptible of direct proof and that generally it must be deduced from the circumstances of the particular case. See *Wilhoit v. Fite*, 341 S.W.2d 806, 813[2] (Mo. 1960). In this case, appellants point to the following circumstances in support of the allegation of undue influence: (1) physical condition and mental capacity of grantor; (2) unnatural disposition; (3) concealment of existence of deed, and (4) lack of consideration.

Unquestionably, those factors are important in a case such as this. *Drake v. Greener*, 523 S.W.2d 601, 606[4, 5] (Mo.App. 1975), and *Davis v. Pitti*, 472 S.W.2d 382 (Mo.1971), cited by appellants, were cases in which the mental and physical condition of

a grantor, short of complete incompetency, was recognized as a factor in setting aside deeds for undue influence. However, in this case, the evidence as to the mother's physical and mental condition was at best equivocal. Ruth Reeves did testify that her mother had a stroke in November, 1973, and that, while she was at Lois's when the deed was executed, her mother was weak, lethargic, unresponsive in conversation and not "herself." On the other hand, Lois testified that, while her mother was with her, she helped in the household chores. She denied that her mother had had a stroke, only "circulatory" problems. Both Lois and Kenneth stated that they never considered their mother to any extent incompetent. Kenneth testified that, upon her return to the farm, his mother resumed her regular household duties, although she did no work outdoors.

Certainly there was no clear and convincing evidence of either physical or mental disability on the part of the mother which might have been a factor in the obtaining of the deed.

∎ As for the unnatural disposition, appellants rely on testimony that the mother had an equal regard for all of her children and that there was no friction among them. There was evidence that Lois took her mother and, prior to his death, her father on various vacation trips. Kenneth was not as positive as his sister Ruth in describing the harmony among the members of the family. The testimony of Lois and Kenneth was that their mother was concerned that, in the event of her death, the other children would force Kenneth off the farm and that was the reason for making the deed. Kenneth had farmed the place for years. Since 1957 he had farmed it on a sharecrop basis, with his parents receiving the landlord's share of the crops. He was the only child who continued to live on the farm. In such circumstances, the mother's desire to enable him to continue to live on the farm and her method of accomplishing that result is not wholly unnatural, although it was at the expense of other children. There was evidence from which it could be deduced also that she had valid reason to prefer Lois to the other children. Altogether, the circumstances are not such as to make the disposition here involved so unreasonable or unnatural that undue influence would be the most logical explanation for it.

∎ Unquestionably, the existence of the deed was concealed from the other children for more than four years and until the death of the mother. As pointed out in *Bolin*, cited by appellant: "Concealment of the existence of such transfers is yet another factor to consider" [when undue influence is asserted]. 559 S.W.2d 242. Lois explained her mother's wish that the transaction be kept secret by saying that her mother "knowed it would cause confusion." The result which followed revelation of the deed clearly indicates what problem its earlier disclosure would have produced for the mother. Again, the circumstances are not such that the concealment of the deed is explained only on the basis of undue influence.

∎ There was no consideration for the deed. "The mere lack of consideration in a deed from parent to child does not per se invalidate the deed but it is an element to be considered." *Davis*, 472 S.W.2d at 387(2). The circumstances above referred to are such that this factor cannot be said to be entitled to convincing weight in this case.

Considering the factors relied upon by appellants and even assuming the existence of a confidential relationship, this court cannot say that the trial court's conclusion that there was no evidence of undue influence was contrary to the weight of the evidence. *Murphy*. The burden was upon appellants to establish their case by clear, cogent and convincing proof. *Cruwell v. Vaughn*, 353 S.W.2d 616, 624[1–6] (Mo. 1962). The trial court did not find appellants' evidence met the test. Its conclusion has not been shown to have been erroneous.

Judgment affirmed.

All concur.