Rose S. SPAUNHORST, et al., Plaintiffs-Respondents,

v.

Otto SPAUNHORST, Jr., et al., Defendants-Appellants.

No. 45376.

Missouri Court of Appeals, Eastern District. Division Two.

Feb. 22, 1983.

Motion for Rehearing/Transfer to Supreme Court Denied April 15, 1983.

John Robert O'Connor, Lee Young, Kimme, Lamke & O'Connor, Washington, for defendants-appellants.

Thomas J. Briegel, Union, for plaintiffs-respondents.

DOWD, Judge.

Appeal from judgment which set aside a general warranty deed of Rose S. Spaunhorst (hereinafter grantor) to her seven grandchildren on the ground that the grantor lacked mental capacity to execute the deed. Defendants-appellants contend the judgment should be reversed on the following grounds:

1) The trial court erred in failing to sustain defendants' motion to dismiss for plaintiff's failure to properly substitute parties; 2) No clear, cogent and convincing evidence was offered to show that the grantor was incompetent at the time she executed the deed; 3) The trial court erred in denying defendants' motion for trial by jury; 4) The trial court erred in its admission of the grantor's adjudication of incompetency; 5) The trial court failed to provide findings of fact and conclusions of law when they were timely requested; and, 6) The trial court erred in overruling defendants' motion to sequestrate the witnesses.

We affirm.

The following evidence was adduced at trial: On March 22, 1979, the grantor executed the deed in question purporting to convey 120 acres to her seven grandchildren, Christy Lindemann; Otto Spaunhorst, Jr.; Gregory Spaunhorst; Lisa Hoppe; John Spaunhorst; Cindy Spaunhorst; and Daniel Spaunhorst as tenants in common reserving a life estate to herself.

On March 23, 1979, the grantor, Rose S. Spaunhorst; her son, Otto S. Spaunhorst,

Sr. and Rose Mary Spaunhorst, his wife; and five of the grantees, Christy Lindemann and Richard Lindemann, her husband; Gregory Spaunhorst and Beth Spaunhorst, his wife; John Spaunhorst; Daniel Spaunhorst; and Cindy Spaunhorst commenced this action in equity alleging that the grantor was incompetent. Additionally, all of the grantees with the exception of the defendants, conveyed the land back to the grantor.

On June 5, 1979 the grantor was declared incompetent by the Probate Court. A suggestion of the grantor's death was filed on November 8, 1979 but no substitution of parties was ever made. At trial, both plaintiffs' and defendants' counsel stipulated and consented to the substitution of the grantor's personal representative Otto Spaunhorst, Sr. On November 21, 1979 all of the aforementioned plaintiffs with the exception of the grantor were dismissed by the court.

Both plaintiff's and defendant's evidence consisted of medical testimony as well as the testimony of family, social, and business relations. The grantor was approximately 90 years old. Dr. John D. Crane, a licensed psychiatrist examined the grantor on two occasions following the execution of the deed. These examinations lasted approximately one-half hour. During the first visit on March 23, 1979, one day after the execution of the deed, the grantor appeared disoriented and confused. She also did not remember signing the deed in question and did not know the value of her property. On March 26, she was again disoriented and confused about recent events. During this examination she stated her daughter had died the year before when in reality she had died 27 years earlier. She also stated that she knew she had conveyed the farm but did not know the reason.

As a result of these two examinations Dr. Crane diagnosed her condition as chronic senile brain syndrome.

Plaintiff's second witness, Dr. Donald Baker, was the grantor's physician from 1969 until her death. He also examined her on March 23, 1979 and found her to be confused, disoriented, and unable to identify him or recognize her surroundings. She also did not remember signing anything the previous day. Dr. Baker also diagnosed the grantor as having senile organic brain syndrome. Both doctors testified that senile organic brain syndrome can be accompanied by periods of lucidity.

Mr. Ed Stierberger had handled several legal matters for the grantor since 1969 including an estate plan for her and her husband with Otto Spaunhorst, Sr. as the residuary legatee. Stierberger also testified he observed her becoming more confused sometime in 1977 and that when he saw her in April of 1979 she confused him with Dr. Baker. Mr. Stierberger further testified that with regard to a tax plan, the grantor told him that her husband had always told her never to give any real estate away and that she was not interested in giving it away regardless of the tax consequences.

Several of the grantor's grandchildren testified as to her deteriorating mental condition. Her granddaughter Christine Lindemann testified her grandmother was capable of taking care of most of her needs before 1977. However, beginning in 1977 she noticed the grantor would just sit around. At one point the grantor confused Christine with the grantor's sister Matilda who had died 20 years previously. When questioned by Christine about the deed, the grantor replied she did not know what she had done, that a woman had her sign a paper and that she did not know what it said.

Another grandchild, Cynthia Spaunhorst testified to changes in the grantor after 1977. She testified the grantor started becoming sad and tearful and would sometimes wander off saying she was going to school. The grantor also started referring to Cynthia as "Sophia" the grantor's sister who had died at the age of 3.

Several friends and neighbors also testified as to changes in her mental condition after 1977. For example, Mrs. Bernetta Eckelkemp had known the grantor for over 40 years and testified that the grantor would at times not even recognize her. Another acquaintance, Anna Mae Mantels, a

restaurant manager, had also known the grantor for over 40 years and testified that the grantor did not recognize her at all when she was brought to the restaurant for breakfast. Carol Bolen also knew the grantor for two years from August of 1978 until August of 1980. She testified the grantor would wander off stating she was going to school and that at times she would confuse the seasons and think it was summertime when actually it was winter.

Defendants presented evidence to the effect that the grantor signed some checks between 1978 and May of 1979; that an employee at the supermarket would carry on a conversation with the grantor, and that the grantor would write out a check. Additionally, a notary public saw the grantor execute the deed and then notarized it. The evidence also reveals that on the morning the deed was executed, the grantor appeared at the attorney's office[1] with defendant, Lisa Hoppe. Defendant stated she had spoken with Mr. Young the previous evening and that they had an appointment. Mrs. Schroeder, Mr. Young's secretary, testified that she prepared the deed and read it to the grantor on two occasions and that the grantor stated she wanted all seven grandchildren to receive the farm. Furthermore, the grantor asked whether she could still remain in the house.

Based on the foregoing evidence the trial court found the grantor was mentally incompetent to execute the subject deed. This appeal ensued.

■ For their first point defendants argue that the trial court committed reversible error in failing to sustain their motion to dismiss because of plaintiff's failure to properly substitute parties as required by Rule 52.13(a) V.A.M.R. We disagree. Specifically, this rule requires that after counsel has filed a suggestion of death, a substitution of parties be made within 90 days. Plaintiff in this case concedes he failed to comply with this requirement. However, the record reveals that at trial, both plaintiff's and defendants' counsel agreed and

stipulated to the substitution of Otto Spaunhorst, Sr. with the understanding that under § 491.010 RSMo 1978 known as the Dead Man's Statute he would be incompetent to testify as to transactions with the decedent prior to her death and as to matters dealt with as executor of her estate. It is clear that plaintiff satisfied this agreement. Otto Spaunhorst, Sr.'s short testimony did not delve into any transactions with the grantor or as executor of her estate. Moreover, pursuant to this agreement defendants allowed the case to proceed, recognizing Otto Spaunhorst, Sr. as plaintiff. Defendants are in no position now to complain of the fact that a proper substitution of parties was not made within 90 days. See State ex rel. State Highway Commission v. Houchens, et al., 235 S.W.2d 97 (Mo. App.1950). Point denied.

Defendants' second and fourth points are defective in that they are stated in conclusionary terms and fail to comply with Supreme Court Rule 84.04(d). However, the nature of this action setting aside a deed persuades us to review both points.

■ In their second point defendants in essence contend that the judgment was against the weight of the evidence. In support of this defendants argue that plaintiff's burden at trial was "clear, cogent and convincing" and therefore the evidence had to have been so unquestionable in character that no reasonable doubt can be entertained of its truth. See Wingate v. Griffin, 610 S.W.2d 417, 419 (Mo.App.1980). As such, defendants maintain that there was no clear, cogent and convincing evidence establishing that the grantor lacked the necessary mental capacity to execute a valid instrument of conveyance. Cruwell v. Vaughn, 353 S.W.2d 616 (Mo.1962); Peterein v. Peterein, 408 S.W.2d 809 (Mo.1966). We disagree. Our review of a court tried case is governed by the standards established in Murphy v. Carron, 536 S.W.2d 30 (Mo. banc 1976) and we will affirm the judgment unless it is not supported by substantial evidence, unless it is against the

---

1. The attorney involved in this transaction was not Mr. Stierberger who had handled legal matters for the grantor since 1969.

weight of the evidence, unless it erroneously declares the law or unless it erroneously applies the law. There are a number of facts and circumstances which tend to support a finding that the grantor was not capable of making a valid conveyance.

In the instant case, two doctors diagnosed the grantor as suffering from senile brain syndrome. Defendants attempt to dismiss this by arguing that Dr. Crane was not cognizant of several of the grantor's physical maladies which might have affected her demeanor and behavior in his presence. Defendants further argue that there existed contradictory evidence from plaintiff's other witnesses. However, we find no such evidence and the doctor's observations were supported by testimony of two of the grantor's grandchildren, Cynthia Spaunhorst and Christine Lindeman, who were also grantees under the deed. Moreover, testimony by the grantor's attorney, and several other acquaintences also support the conclusion that the grantor was incompetent on the day of the execution of the deed. The grantor's family and friends were familiar with her physical maladies and still maintained she was disoriented, confused, and that she did not fully realize the consequences of executing the subject deed. Testimony from family, social and business relations with an opportunity to observe conduct, habits and mental peculiarities is entitled to great weight. *Foster v. Henderson,* 538 S.W.2d 910 (Mo.App.1976); *Holton v. Cochran,* 208 Mo. 314, 106 S.W. 1035, 1066 (1907). After considering the aforementioned evidence we hold it is sufficient to satisfy the clear, cogent and convincing test and supports the finding that the grantor lacked mental capacity to execute the deed in question. Accordingly, the judgment in the instant case is found to be supported by substantial evidence, it was not against the weight of the evidence, it did not erroneously declare the law and it did not erroneously apply the law. *See Murphy v. Carron, supra.* Point denied.

■ In their third point defendants maintain they were deprived of their inviolate right to trial by jury in that a civil action requires a jury unless waived. Mo. Const. Art. I § 22(a) (1945). It is well settled that a suit to set aside a deed has always been held to be a case in equity. As such defendants were not entitled to a trial by jury and their third point must be denied. *See McCoy v. McCoy,* 360 Mo. 199, 227 S.W.2d 698 (Mo.1950); *Fein v. Schwartz,* 404 S.W.2d 210 (Mo.App.1966); *Wingate v. Griffin,* 610 S.W.2d 417 (Mo. App.1980).

■ In their fourth point which we have already noted is defective, defendants object to the admission into evidence of the grantor's adjudication of incompetency. Defendants argue that an adjudication of incompetency is not retroactive in its application and that plaintiff's lack of any further evidence supports the conclusion defendants were prejudiced. We disagree. While the admission of said evidence may have been improper it is not necessarily a ground for reversing the judgment. *See Smead v. Allen,* 581 S.W.2d 93 (Mo.App. 1979). Moreover, the court noted it disregarded said evidence in rendering its decision. As such we fail to find the defendants were prejudiced in any way by its admission. There was clearly sufficient competent independent evidence upon which the court could find the grantor lacked the mental capacity to weigh and appreciate the consequences of her actions in executing a deed to her property.

Defendants in their fifth point claim the trial court erred in not providing findings of facts and conclusions of law in accordance with defendants' request.

■ Defendants specifically requested a brief opinion including a statement of the grounds for its decisions and further requested a finding on several controverted fact issues. Our review of the record reveals the court did enter an opinion answering almost all of the issues raised by defendants.

Furthermore, the trial court's failure to answer all of defendants' requests is not sufficient cause for reversal. *Hahn v. Hahn,* 569 S.W.2d 775 (Mo.App.1978). Any error in this respect does not materially affect the merits of the case. Rule 84.13(b) V.A.M.R. Accordingly, defendants' fifth point is denied.

In their final point defendants contend the trial court abused its discretion in overruling their motion for a sequestration of witnesses on the ground of the great possibility of influence of one witness over another. The decision to sequester witnesses is left to the sound discretion of the trial court and subject to reversal only upon a clear showing of abuse and prejudice. *See Stanford v. Morgan*, 588 S.W.2d 89 (Mo.App.1979). The record reveals defendants' counsel gave the trial court no specific reasons why the witnesses should be excluded. In fact, defense counsel only argues the witnesses were related and shared common bonds of relationships by employment, profession or extended family.

Clearly, this is an insufficient showing of prejudice and the trial court's denial of said motion was not an abuse of discretion. Point denied.

For the foregoing reasons the judgment in all respects is affirmed.

SNYDER, P.J., and GAERTNER, J., concur.