**Vernon E. QUEATHEM, et al.,**
**Plaintiffs-Appellants,**

v.

**Cordell V. QUEATHEM, et al.,**
**Defendants-Respondents.**

No. 50036.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 10, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 16, 1986.

Cynthia S. Holmes, St. Louis, for plaintiffs-appellants.

Donald J. Gunn, Jr., St. Louis, for defendants-respondents.

KELLY, Judge.

This appeal arises from an action in equity by legatees of Victor Queathem, deceased, to set aside a deed to real estate from decedent to respondents, and to require an accounting and impose a constructive trust on monies received by respondents from or on behalf of decedent. The appellants, nieces and nephews of grantor and legatees under his last Will and Testament, allege that the deed was executed while grantor was mentally ill and infirm and lacking capacity to make a valid conveyance. Appellants also allege that the grantor executed the deed to the respondents as the result of undue influence exerted by respondents.

The Circuit Court of the County of St. Louis entered its order finding for respondents on the grounds that the decedent had sufficient mental capacity and was not unduly influenced in making the deed and creating the joint bank accounts. We affirm.

Victor Queathem was married for more than 50 years to Irene Queathem. Victor and Irene Queathem had no children. In 1977, Victor Queathem executed a will in which he left all of his property and his residuary estate to all of his nieces and nephews. His wife, Irene, executed an identical will on the same date.

Irene Queathem died on March 26, 1978. At the time of Irene Queathem's death, Victor and Irene Queathem owned a farm as tenants by the entireties. Within a few days after Irene Queathem's funeral, Victor Queathem rented out his farm to Mr. John Pellet, a neighbor. Pursuant to a verbal agreement, Mr. Pellet made payments from September 30, 1980 through April, 1982 to Victor Queathem. Beginning in 1980, the payments to Victor were delivered to Cordell Queathem. In April of 1982, Mr. Pellet made payments payable to respondent Cordell Queathem until Novem-

ber of 1984. From 1980 to the time of trial, a total of $18,444.48 was paid by Mr. Pellet for rent for Victor's farm.

Victor and Irene Queathem were also the owners of several bank accounts totalling $55,319.12. After Irene Queathem's death, Victor Queathem added the name of Respondent Cordell Queathem to accounts totalling $45,050.89. Victor Queathem had written the bulk of the checks prior to 1979. During 1979, respondent Cordell Queathem wrote most of the checks, and in March, 1980, respondent Betty Queathem's name was added to the checking account.

On April 11, 1980, two separate savings accounts were opened in the names of Victor Queathem and Cordell Queathem as joint tenants, with an opening balance of $10,000.00 each. Cordell Queathem withdrew the sums of $9,605.40 and $9,706.32 from the savings accounts to repay a personal loan.

During Victor's lifetime, checks totalling $26,900.00 were written by Cordell and Betty Queathem payable to themselves. Cordell and Betty Queathem received a total of $90,093.81 in proceeds from Victor Queathem's bank accounts and rental proceeds from the farm.

Several witnesses testified that following his wife's death, Victor became increasingly withdrawn, pale and physically weak. He suffered from diabetes and prostate cancer, and was hospitalized on June 14, 1980. One week later, he was transferred to a nursing home where he resided until his death, in October of 1981, at the age of 81.

Dr. George Robben testified that he was Victor Queathem's family physician since 1969, and that he treated Victor in the hospital in 1979, which resulted in his confinement in the nursing home. The last time Dr. Robbens examined Victor was in June of 1980. According to the initial hospital records, there is nothing that reflects mental confusion. The hospital records of June 24, 1980 and July 20, 1980 described Victor as alert, and indicated that Victor responded properly to questions. The entry of September 2, 1980 stated that Victor was up in a wheelchair, went to the dining room for meals, and that his appetite was good. Additionally, the notes indicated that he was pleasant and cooperative. Based upon Dr. Robben's relationship with Victor Queathem and the nurses notes taken at the nursing home, he testified that it was his opinion that Victor Queathem was mentally competent on September 2, 1980.

Dr. Virgil Fish also testified. He treated Victor Queathem from the time he entered the nursing home until his death. Dr. Fish initially examined Victor on July 5, 1980. He testified that in July Victor Queathem understood what he said when he spoke to him. He also testified that Victor was depressed most of the time, as he would sit in a chair and at times begin to cry when asked questions. Dr. Fish further testified that in his opinion, based upon a reasonable degree of medical certainty, Victor was unable to handle his finances and also lacked the mental capacity to understand a legal transaction such as a deed.

On September 2, 1980, Victor Queathem, through a quit-claim deed, transferred his farm from his name to Cordell and Betty Queathem. The land, containing approximately 43.06 acres, was valued after Victor's death at $278,000.00.

Appellants contend the trial court erred in refusing to set aside and cancel the deed of September 2, 1980 because there was clear, cogent and convincing evidence: (1) that Victor Queathem was mentally incompetent when he executed the deed; and (2) that the deed was executed as a result of undue influence exerted by respondents. Appellants also contend that the trial court erred in refusing to impose a constructive trust on certain assets held in the names of Victor Queathem and respondents as joint tenants with the right of survivorship.

We affirm the judgment of the trial court.

We deal first with appellants' argument that the trial court erred by refusing to set aside and cancel the deed executed on September 2, 1980, due to the lack of mental capacity of the grantor. Appellants argue

that lack of mental capacity, coupled with the undue influence exerted by the respondents in a confidential relationship, are grounds for cancelling and setting aside the deed. We disagree.

It should be noted at the outset, that in a court-tried case on appeal, the appellate court will defer to the lower court on matters of credibility, and the judgment must be affirmed unless no substantial evidence supports it, unless it is against the weight of the evidence, unless it erroneously declares the law, or erroneously applies the law. *Stratton v. Stratton*, 694 S.W.2d 510, 512 [1, 2] (Mo.App.1985). "The cancellation of a deed is an extraordinary proceeding in equity and in order to justify such cancellation, the evidence in support thereof must be clear, cogent and convincing." *Wingate v. Griffin*, 610 S.W.2d 417, 419 [6] (Mo.App.1980).

█ In the instant case, there are a number of facts and circumstances which tend to support a finding that the grantor possessed the mental capacity on September 2, 1980, to understand the nature and effect of the legal transaction of executing a deed. The medical records in the nursing home indicate on September 2, 1980, that Victor was pleasant and cooperative. Dr. Robben, Victor Queathem's family physician, testified that he interpreted 'cooperative' as meaning that Victor Queathem was following normal instructions and the normal routine of the nursing home. Most importantly, on the day that the deed was executed, there is no entry of mental confusion.

Appellants cite several entries in the hospital record from June, 1980 through September, 1980 when Victor Queathem was disoriented, forgetful and depressed. However, in *Flynn v. Union National Bank of Springfield*, 378 S.W.2d 1, 8 [5] (Mo.App.1964), the court held that "spotty occasions of mental incapacity occurring at intervals do not necessarily prove incapacity at the time the act was done." The burden is upon those who seek to have the deed set aside to establish that at the time of the execution of the deed the grantor

lacked such mental capacity. *Cruwell v. Vaughn*, 353 S.W.2d 616, 624 [4] (Mo.1962). In the instant case, Victor Queathem's family physician testified in his opinion that Victor was mentally competent on September 2, 1980. In addition, the hospital records do not indicate that he was confused or lacking in mental capacity on September 2, 1980.

Further evidence adduced at trial supports the conclusion that Victor Queathem was not mentally confused at the time of the execution of the deed. Appellant Donald Boenker testified that Victor responded properly to questions. Other appellants testified that Victor recognized them at the nursing home and that Victor would respond during conversations with correct yes or no answers.

█ Counsel for appellant stresses in her brief that several appellants testified that after the death of Victor Queathem's wife, Victor became physically weak and depressed. However, physical abnormalities and depression does not constitute insufficient mental capabilities. One can be depressed and ill and still retain the ability to execute a deed to real estate.

Appellants rely on *Spaunhorst v. Spaunhorst*, 650 S.W.2d 650 (Mo.App.1983) to support their position. In *Spaunhorst*, the court of appeals upheld the findings of the trial court which held that the grantor was mentally incompetent to execute a deed purporting to convey property to her seven grandchildren. The *Spaunhorst* court held that testimony from family, social and business relations with an opportunity to observe conduct, habits, and mental peculiarities is entitled to great weight. *Spaunhorst, supra* at 654. Appellants contend that in the case at bar, the testimony from Victor Queathem's family and friends indicate that he lacked the mental capacity to execute a deed on September 2, 1980.

However, testimony from Dr. Robben and Victor Queathem's friends, indicate that he was mentally competent. An appellant, Mary Ellen Seeger, testified in her

deposition that Victor "seemed in sound mind, seemed natural." Another witness testified that Victor Queathem was active in church activities both before and after his wife died.

In reviewing all of the evidence adduced at trial, appellants have failed to meet their burden of producing clear, cogent and convincing evidence that Victor Queathem was mentally incompetent on September 2, 1980. We find that the trial court did not err in refusing to set aside and cancel the deed and rule this point against appellants.

Appellants next contend that the trial court erred in refusing to set aside the deed of September 2, 1980, because the deed was executed as a result of undue influence exerted by respondents while in a confidential relationship with the grantor. We find that the evidence does not support a finding of undue influence.

■ "Undue influence" is that influence which, by force, coercion, or overpersuasion, destroys free agency of grantor to act. *Davis v. Pitti,* 472 S.W.2d 382, 387 [6] (Mo.1971). Mere opportunity alone or mere suspicion of undue influence unsupported by evidence showing its actual existence is not sufficient to invalidate a deed. *Mintert v. Gastorf,* 417 S.W.2d 101, 106 [7] (Mo. 1967). Furthermore, natural influence of affection, attachment or desire to gratify wishes of one beloved and trusted does not constitute "undue influence" invalidating a deed. *Sebree v. Rosen,* 349 S.W.2d 865, 873 [11] (Mo.1961).

Appellants cite the following facts to justify a finding of undue influence: (1) the lack of consideration for the deed; (2) the fact that respondents concealed the existence of the deed from all the relatives; (3) the grantor's reduced mental capacity and physical disabilities; (4) the respondents' use of Victor Queathem's funds; and (5) the fact that respondents were in a confidential relationship with grantor.

■ The case law is well-settled that lack of consideration in and of itself will not support a finding of undue influence. *Wingate v. Griffin,* 610 S.W.2d 417, 420 [10] (Mo.App.1980). Furthermore, the deed states that Victor Queathem received the sum of $1.00 and other valuable consideration for the execution of the deed.

Secondly, respondents did not conceal the existence of the deed as it was properly recorded on September 8, 1980 in the County Recorder's office.

We have already discussed at length our finding that Victor Queathem did not lack the mental capacity to execute the deed on September 2, 1980. Therefore, appellants' evidence of reduced mental capacity and physical disabilities to show undue influence is not supported by the record.

Fourthly, bank records were offered at trial to show that respondents paid Victor Queathem's nursing home bills. There is no other evidence in the record before us to show the purposes for which the other funds were used.

■ Finally, appellants contend that once a confidential relationship has been established, undue influence can be inferred from all of the facts detailed in evidence. Even if a confidential relationship had been proved, standing alone it would not have entitled appellants to relief. "The mere existence of a confidential relationship does not give rise to a presumption of undue influence." *Reeves v. Boone,* 591 S.W.2d 118, 121 [4] (Mo.App.1979). In addition to the confidential relationship, there must be some evidence from which the court can infer undue influence. Under the circumstances presented here, appellants have failed to demonstrate such evidence. Accordingly, the trial court properly found that the execution of the deed did not result from undue influence. We rule this point against appellants.

Appellant next contends that the trial court erred in refusing to impose a constructive trust on certain assets held in the names of Victor Queathem and respondents as joint tenants with the right of survivorship. We disagree.

Victor Queathem added Cordell Queathem's name to several bank accounts totalling approximately $45,000.00. Appellants

argue that the joint accounts were created as a result of undue influence.

Appellant relies on *Skidmore v. Back*, 512 S.W.2d 223 (Mo.App.1974). This case is distinguishable from the instant case, and is not, in our opinion, controlling here. In *Skidmore*, the grantor had placed certain accounts in the names of himself and his children as joint tenants. There was evidence that the defendant persuaded the grantor to close the account which was intended for the plaintiff, and place those funds in an account for the defendant. The defendant then used the funds for his own purposes. The *Skidmore* Court held that a constructive trust is available to one who has been wrongfully deprived of some "expectancy" in property which but for wrongful conduct he would have had. *Id.* at 231.

In the instant case, the accounts were originally titled in the name of Victor Queathem, as the survivor of Irene Queathem. There is no evidence that these accounts were intended for use by the plaintiffs, nor had the plaintiffs been wrongfully deprived of the use of Victor Queathem's bank accounts.

██ Additionally, appellants must show undue influence existed at the time the accounts were created. *Sebree v. Rosen*, 349 S.W.2d 865, 873 [12] (Mo.1961). The grantor's mental and physical condition are factors for consideration on the issue of undue influence. *Skidmore v. Back*, 512 S.W.2d 223 [5] (Mo.App.1974); *Flynn v. Union National Bank of Springfield*, 378 S.W.2d 1, 11 [15] (Mo.App.1964). The record supports a contention that Victor Queathem was of sound mind when he transferred Cordell's name to the bank accounts. There is evidence that at the time the accounts were created, Victor Queathem wrote the majority of checks. Thus, Victor Queathem had sufficient mental capacity to handle his financial affairs.

There is also evidence that Victor entered into a legal agreement in 1978. Victor Queathem's neighbor, John Pellet, testified that immediately following Victor's wife's death, Victor was of sufficient mental capacity to enter into an agreement, whereby Mr. Pellet would farm Victor's property and receive two-thirds of the profits and give the other third to Victor. Victor Queathem was competent to enter into such an agreement with Mr. Pellet during the same time period that he created the joint accounts.

The burden of proving undue influence is upon the party asserting it. *Flynn v. Union National Bank of Springfield*, 378 S.W.2d 1, 10 [10] (Mo.App.1964). We find that the appellants have not met their burden. Victor Queathem was of sound mind during the time period in which he added Cordell's name to the accounts. There is no evidence on record as to the exertion of undue influence on the part of respondent in creation of the accounts. We find no error. We hold there is no merit to this point.

Judgment affirmed.

CRANDALL, P.J., and PUDLOWSKI, J., concur.