**ESTATE OF Alice HELMICH,
Plaintiff-Respondent,**

v.

**Thomas J. O'TOOLE, et al.,
Defendants-Appellants.**

No. 51783.

Missouri Court of Appeals,
Eastern District,
Division Three.

May 12, 1987.

Motion for Rehearing and/or
Transfer Denied
June 9, 1987.

Application to Transfer Denied
July 14, 1987.

Terrance L. Farris, Clayton, for defendants-appellants.

Steven M. Hamburg, Clayton, for plaintiff-respondent.

CRANDALL, Judge.

Defendants, Thomas J. O'Toole, Marianne O'Toole, and Tracey O'Toole, appeal the judgment in a court-tried case from St. Charles County, in favor of plaintiff, Estate of Alice Helmich, setting aside a deed to real property located that county. Defendants, Thomas J. O'Toole and Kathryn Watkins, appeal the grant of summary judgment by the Circuit Court in St. Louis County, in favor of plaintiff, setting aside a deed to real property located in St. Louis County and ordering Thomas J. O'Toole to remove his name from a certain certificate of deposit. The appeals have been consolidated for our review. We affirm the judgment of the St. Charles County Circuit Court. We affirm in part and reverse and remand in part the judgment of the St. Louis County Circuit Court.

We first consider the St. Charles County appeal. Our standard of review of this court-tried case is governed by the oft-cited *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). It is the prerogative of the trial court to determine the credibility of the witnesses, accepting or rejecting all, part, or none of the testimony. *Haynes v. Missouri Property Ins. Placement Facility*, 641 S.W.2d 497, 500 (Mo.App.1982). On appeal, we accept as true the evidence and reasonable inferences therefrom favorable to the prevailing party and disregard contradictory evidence. *MacCurrach v. Anderson*, 678 S.W.2d 459, 463 (Mo.App. 1984). Except in a rare case, the fact that

there is evidence which would support a different conclusion is not material. The question is whether there is substantial evidence to support the conclusion that was reached. With these principles in mind, we now consider the evidence.

Alice Helmich was an eighty-one year old woman who had never married. She owned a home in St. Louis County, in which she resided. She also owned a farm in St. Charles County, which consisted of approximately 129 acres. The farm was of considerable value.

Miss Helmich enjoyed a close personal relationship with a nephew, Raymond Helmich, who was an attorney. Raymond Helmich assisted Miss Helmich in the management of her business and financial affairs. In conjunction with these duties, he was named as joint tenant with right of survivorship on some of her bank accounts and his name was placed on her safe deposit box.

Raymond Helmich died in September, 1983. His death left Miss Helmich "depressed, distraught, and lonely." She was also angry at his widow, Sandra Helmich. The rift between them had been precipitated by a disagreement over whether certain medical procedures should have been employed to prolong Raymond Helmich's life.

Raymond Helmich had been associated in the practice of law with Thomas J. O'Toole. After Raymond Helmich's death, Mr. O'Toole became increasingly friendly with Miss Helmich. He took over the task of helping her with her business affairs. In December, 1983, Miss Helmich put Mr. O'Toole's name on her safe deposit box. She also made him joint owner with right of survivorship of a certificate of deposit in the face amount of $13,000 and of a savings account of approximately of $3,400.

At that point in time, Miss Helmich had been under the treatment of a physician since 1981. She was in poor health physically. She was blind in one eye. She had been diagnosed previously as suffering from breast cancer. In January, 1983, a mastectomy had been performed.

On January 1, 1984, Miss Helmich became ill and called Mr. O'Toole to take her to the hospital. On January 2, she suffered cardiorespiratory arrest which resulted in a loss of oxygen to the brain. Her condition was diagnosed as "anoxic encephalopathy." She was placed in the intensive care unit for about one week. Three weeks later, she was transferred to the rehabilitation unit for physical therapy. Prior to her discharge, attending physicians recommended that she have help in caring for herself. Miss Helmich was adamant about not being placed in a nursing home.

Miss Helmich was released from the hospital on February 8, 1984. Mr. O'Toole's mother-in-law, Mrs. Kathryn Watkins, moved into Miss Helmich's home to care for her. On February 19, 1984, Miss Helmich executed a will. Although the testimony is not entirely clear on this point, she apparently bequeathed her farm in St. Charles County to Mr. O'Toole, his wife, Marianne and his daughter, Tracey; and her house in St. Louis County to Mrs. Watkins. Three days later, on February 22, 1984, she signed two quit claim deeds. She deeded her farm in St. Charles County as follows: "Alice Helmich and Thomas J. O'Toole and Marianne O'Toole and Tracey Marie O'Toole, as joint tenants, with right of survivorship, and not as tenants in common." She conveyed her home in St. Louis County to Alice Helmich, Kathryn Watkins, and Thomas O'Toole, as joint tenants with right of survivorship. The deeds were recorded by Mr. O'Toole. After April 27, 1984, Miss Helmich refused the help of the O'Toole family. She repudiated the will and asked the O'Toole family to return her property. They refused.

Miss Helmich testified at trial. She stated that, in early April, 1984, she asked Mr. O'Toole for the documents which she had signed. Upon reading the will and the deeds, she was "shocked" to discover their contents. She remembered signing the documents, but claimed that she did not understand what she was signing at the time. She stated that she had not read over the documents or used her magnifying glass before signing them. Further, she could not recall entering into any agreement with the O'Toole family with regard

to her care. On April 27, 1984, she told Mrs. Watkins to get out of her home because she did not want to be cared for by a "stranger." She has not allowed the O'Toole family to help her since that date.

Thelma Arms, a neighbor and friend of Miss Helmich, visited her often. She testified that Miss Helmich did not recognize her in the hospital and frequently forgot her previous visits. Thelma Arms witnessed the will drawn up by Mr. O'Toole. She said that Miss Helmich needed to be helped to the table to sign the will. Miss Helmich did not converse with Thelma Arms during the execution of the will. She only responded that she was "not well" when Thelma Arms inquired about her health. When she witnessed the will, Thelma Arms did not know that she was attesting to Miss Helmich's sound mind and memory. She also testified that Miss Helmich needed a magnifying glass to read. She related that Miss Helmich had told her that Mr. O'Toole was "standing in" for her nephew.

Craig Cook, a longtime friend of Miss Helmich, testified that he visited her in the hospital and at home. He stated that she was confused and talked about animals and people who were dead as if they were still alive. He said that, on one of his visits to the hospital, she had asked him to move into her house to care for her. He stated that, when he visited Miss Helmich at her home, Mrs. Watkins would frequently whisper to him that Miss Helmich was "crazy."

Gerald Goodman, a friend and veterinarian who treated Miss Helmich's pets, also visited Miss Helmich in the hospital and at her home. He said that Miss Helmich talked about her dog as if the animal were still alive.

Sandra Helmich, a psychiatric nurse and the widow of Miss Helmich's nephew, Raymond, testified that Miss Helmich would incorrectly identify visitors and would inquire about people who were deceased. She said that, when she visited Miss Helmich at her home, Mrs. Watkins always remained in the room with them. When questioned about Miss Helmich's mental condition, Sandra Helmich described her as being "in and out" of a confused state of mind.

The deposition of Miss Helmich's treating physician, Dr. William Emerson, was read into evidence at trial. He had treated Miss Helmich since 1981. He stated that Miss Helmich was "oriented as to person, place, and time." In his opinion, however, she was not "capable of independent decision making or care." He said that she had improved steadily both in the hospital and after her return home. He reported, however, that she still exhibited some distinctive signs of anoxic encephalopathy; such as, impaired memory and recall, and frequent agitation. In addition, she required "prompting" to do simple tasks on her own and lacked sufficient judgment to handle her ordinary business affairs.

On May 29, 1984, Alice Helmich filed a petition in the Circuit Court of St. Louis County to set aside the deed to her home as well as "other conveyances." On July 10, 1984, Alice Helmich filed a similar petition in the Circuit Court of St. Charles County to set aside the deed to her farm.

The St. Charles County matter was tried first. After the trial commenced, Alice Helmich died and the Estate of Alice Helmich was substituted as party plaintiff. The Circuit Court of St. Charles County issued findings of fact and conclusions of law and ordered that the quit claim deed to the farm be set aside. Thereafter, the Circuit Court of St. Louis County entered summary judgment in plaintiff's favor, ordering the deed to the house to be set aside and ordering Mr. O'Toole to remove his name from the certificate of deposit at United Postal Savings.

In their first point, defendants contend that the St. Charles County trial court erred "in finding Alice Helmich mentally incompetent at the time the deeds were executed as there was no substantial evidence to support this finding and the weight of the evidence demonstrated that Alice Helmich was mentally competent."

"The cancellation of a deed is an extraordinary proceeding in equity and in

order to justify such cancellation, the evidence in support thereof must be clear, cogent and convincing." *Queathem v. Queathem,* 712 S.W.2d 703, 706 (Mo.App. 1986). The burden is upon those who seek to have the deed set aside to establish that, at the time of its execution, the grantor lacked sufficient mental capacity. *Cruwell v. Vaughn,* 353 S.W.2d 616, 624 (Mo.1962). Evidence as to the grantor's condition, both before and after the date of execution, is relevant as to grantor's mental capacity to execute a deed on a given day. *Peterein v. Peterein,* 408 S.W.2d 809, 814 (Mo.1966). The question is: Did Miss Helmich have the mental capacity sufficient to understand the nature of the transaction, to know the extent of her property, and to recognize the objects of her bounty? *See Farr v. Lineberger,* 207 S.W.2d 455, 459 (Mo.1948).

■ In the instant case, close friends and relatives of Miss Helmich described her as being forgetful, confused, and in a weakened physical condition in January and February of 1984. Their observations were reinforced by her treating physician's testimony that she suffered from anoxic encephalopathy, which was reflected in her impaired memory. The doctor also stated that she lacked sufficient judgment and capacity to handle her ordinary business affairs.

■ "Testimony from family, social, and business relations with an opportunity to observe conduct, habits, and mental peculiarities is entitled to great weight." *Foster v. Henderson,* 538 S.W.2d 910, 913 (Mo. App.1976). Miss Helmich's family, friends, and doctor were familiar with her weakened physical and mental condition after her illness in January. They maintained that she did not fully realize the consequences of executing the deed in question. *See Spaunhorst v. Spaunhorst,* 650 S.W.2d 650, 654 (Mo.App.1983).

Although defendants presented evidence which contradicted that of plaintiff, three of the witnesses were the grantees of the property and the defendants in the present action. They were therefore interested witnesses. The witnesses to the will, who testified on behalf of defendants, hardly knew Miss Helmich and saw her only when she executed the will. Finally, the physician who testified as defendants' expert formed his opinions as to Miss Helmich's mental competency solely on the basis of a review of her medical records. He neither gave her a thorough physical examination nor observed her behavior.

Plaintiff's evidence was sufficient to satisfy the burden of showing that Miss Helmich, on February 22, 1984, lacked the mental capacity to execute the deed to her farm in St. Charles County. The trial court did not err in ordering the deed cancelled. Defendants' first point is denied.

In their second point, defendants contend that the trial court erred in finding that Alice Helmich executed the deed to her farm as a result of undue influence exerted by Mr. O'Toole while he was in a confidential relationship with her. In view of our holding under point one, it is unnecessary to address that point.

In their third point, defendants argue that the trial court erred in admitting into evidence the deposition of Dr. William Emerson, Miss Helmich's treating physician. They contend that, in order to use a physician's deposition at trial, there must be proof that the physician is engaged in the discharge of his professional duties at the actual time of trial. Defendants rely on Rule 57.07(a)(3)(c) which provides that any part or all of a deposition may be used against any party present or represented at the taking of the deposition or who had proper notice thereof, if the witness is a "physician and engaged in the discharge of his professional duty at the time of trial...."

During the deposition, the following exchange occurred between plaintiff's counsel and Dr. Emerson:

Q. And you treat patients at your office?

A. Yes, sir.

Q. And you also treat patients at area hospitals, is that correct?

A. Yes.

Q. Doctor Emerson, if this case about which you are to testify was called to be

tried during the day, would you find it impossible to attend the trial of the case? A. Extremely so.

■ Initially, we note that in a court-tried case it is practically impossible to predicate reversible error on the erroneous admission of evidence. *In the Interest of J.A.J.*, 652 S.W.2d 745, 749 (Mo.App.1983). The party making that contention must demonstrate the absence of sufficient competent evidence to support the challenged judgment. *Id.* Here, defendants failed to meet that burden.

■ In addition, there was no error in the admission of the deposition. Dr. Emerson testified that he was a practicing physician in St. Louis County who treated patients during the day and that it would be impossible for him to attend the trial in St. Charles County. The testimony in the deposition need not refer to the specific date of trial. Such a requirement would place an almost impossible burden on the proponent of the deposition. Defendants had ample opportunity to cross-examine the doctor at the time of the deposition about his unavailability for trial. They chose not to do so. We find no abuse of the trial court's discretion in admitting the deposition. Defendants' third point is denied.

In their fourth point, defendants claim that the St. Louis County Circuit Court erred in granting plaintiff summary judgment and in ordering the deed to Miss Helmich's residence to be set aside and Mr. O'Toole's name removed from a certain certificate of deposit.

Summary judgment is a drastic remedy. The appellate court must scrutinize the record in the light most favorable to the party against whom summary judgment was rendered and resolve all doubts in favor of that party. *Union Electric Co. v. Clayton Center Ltd.*, 634 S.W.2d 261, 262 (Mo.App.1982). If a genuine issue of fact exists, summary judgment cannot be granted. *Id.* at 263.

■ Here, the question is whether plaintiff is entitled to summary judgment in the St. Louis County Circuit Court action on the basis of the collateral estoppel effects of the judgment rendered by the St. Charles County Circuit Court. Collateral estoppel, or issue preclusion, provides that a fact judicially determined in one action may not be litigated again in another action involving other different issues. *Novack v. Newman*, 709 S.W.2d 116, 118 (Mo.App. 1985). The test for determining whether the application of collateral estoppel is appropriate is: (1) whether the issue decided in the prior adjudication was identical with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit. *Id.*

We first consider whether summary judgment was proper on the issue of the cancellation of the deed to the residence in St. Louis County. Defendant's sole contention on that issue is that the underlying St. Charles County judgment was erroneous. In view of our holding affirming that judgment, we deny defendants' claim of error.[1]

■ We next turn to the issue of whether summary judgment was proper on the issue of the validity of the transfer of the certificate of deposit into joint ownership. Viewed against the backdrop of the four-pronged test for collateral estoppel, the facts do not warrant the application of collateral estoppel to resolve that issue. The issues in the St. Charles County action and in the St. Louis County action were not identical. The St. Charles County action concerned the issue of the execution of a deed to real property; whereas the issue in the St. Louis County action was the transfer of a certificate of deposit into joint ownership. The execution of the deeds

---

1. We note that Kathryn Watkins was not a party to the St. Charles County action because she was only a grantee of the deed in St. Louis County. The lack of identity of the parties in both actions cuts against the application of collateral estoppel to set aside the deed in the St. Louis County action. That fact, however, is not raised on appeal as a reason to preclude summary judgment. Accordingly, we decline to address that issue.

took place on February 22, 1984, after Miss Helmich suffered anoxic encephalopathy during her hospitalization in January, 1984. In contrast, Miss Helmich had placed the certificate of deposit in her and Mr. O'Toole's name in December, 1983, which was prior to her hospitalization. Defendants did not have a full and fair opportunity to litigate Miss Helmich's competency or Mr. O'Toole's undue influence with regard to the transfer of the certificate of deposit. It was error for the St. Louis County Circuit Court to grant summary judgment on the issue of the transfer of the certificate of deposit on the basis of the judgment rendered in the Circuit Court of St. Charles County.

The judgment of the Circuit Court of St. Charles County is affirmed. The judgment of the Circuit Court of St. Louis County is affirmed in part and reversed and remanded in part.[2]

PUDLOWSKI, P.J., and KAROHL, J., concur.

**2.** Plaintiff's motion to dismiss defendants' appeal and motion for damages for frivolous appeal are denied.