Laurie Rachelle **AMADOR** and Joseph A. Amador, Plaintiffs/Respondents,

v.

**LEA'S AUTO SALES & LEASING, INC., Defendant/Appellant.**

No. 20130.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 1, 1996.

Edward S. Meyer, Adrian P. Sulser, Evans & Dixon, St. Louis, for appellant.

Craig R. Oliver, Daniel R. Wichmer, Miller & Sanford, Springfield, for respondents.

BARNEY, Judge.

This is an appeal from a judgment rendered after a jury verdict was entered in favor of Respondents, Laurie and Joseph Amador, plaintiffs at trial. Their claim arose out of an automobile accident and was tried on a negligent entrustment theory against Appellant, Lea's Auto Sales & Leasing, Inc., defendant at trial, (Lea's Auto).

On September 30, 1991, Robert McFall, a 15–year–old, passed a used car lot, owned and operated by Lea's Auto, while walking to school. McFall stopped at the car lot and looked at several cars. He talked to no one although the lot manager, Troy Cole, observed him looking at the cars. Around 1:00 p.m. that day, McFall returned to the lot and spoke to Cole about test driving an automobile. Cole asked McFall if he had a driver's license to which McFall responded affirmatively as he pulled a card out of his wallet. Cole asked for his social security number but never examined the card McFall had removed from his wallet. The card McFall had in his possession was a Missouri identification card and not a driver's license. Cole and McFall then left the lot with Cole driving and McFall as a passenger. McFall was then given permission to drive the car alone. It was during this test drive that McFall struck the rear of Laurie Amador's vehicle as it sat at a stop sign. Laurie Amador's car was knocked into the on-coming lane of traffic where it collided with another vehicle.

Laurie Amador's seat broke on impact and she was knocked unconscious and taken to the hospital. Several days after her release she began experiencing neck and back pain, dizziness, and headaches. She was diagnosed as having suffered a permanent brain stem injury. She will be on medication for the remainder of her life, will continue to experience dizziness and headaches, and will be unable to return to her work as a hairdresser.

Laurie Amador filed suit claiming that Lea's Auto had negligently entrusted the automobile to an under-age driver. Joseph Amador also filed a claim for loss of consortium. The jury returned a verdict in the Amadors' favor in the amount of $370,000 as to Laurie Amador and $5,000 as to Joseph Amador's claim.

Defendant cites five points of error on appeal: 1) the trial court erred in the admission of an expert's deposition testimony and in not allowing defendant the opportunity to question plaintiffs regarding certain abandoned pleadings; 2) the trial court improperly overruled several objections concerning plaintiffs' closing argument; 3) the trial court erred in overruling defendant's motion for directed verdict and judgment notwithstanding the verdict; 4) the trial court erred in giving Instruction No. 6, the verdict director; and 5) the trial court erred in the calculation of damages.

### I.

As part of its first point on appeal, Defendant claims that the trial court abused its discretion by admitting the deposition of Dr. Mary Downs because plaintiffs failed to establish that Dr. Downs was unavailable to attend trial.

According to Rule 57.07(A)(3)(C), Missouri Rules of Civil Procedure (1995), the deposition of a witness may be used in lieu of live testimony if the court finds that the witness is a practicing physician and engaged in the discharge of his official or professional duty at the time of trial. This finding may be based upon testimony found within the deposition itself. *Null v. Gray,* 534 S.W.2d 823 (Mo.App.1976); *Wilson v. Consolidated Rail Corp.,* 875 S.W.2d 178 (Mo.App.1994). "The factual determination of whether the requirements of Rule 57.07 are satisfied is a determination largely within the trial court's discretion, strict compliance with the express requirements of the rules *as of the time the deposition is offered* is not a matter of discretion." *Nachtweih v. Maravilla,* 861 S.W.2d 164 (Mo.App.1993). (Emphasis in original.)

In the present case, trial was originally scheduled for November 28, 1994. The

deposition of Dr. Downs was taken on November 16, 1994, during which counsel attempted to establish that Dr. Downs would be unavailable for trial:

"Q: Now, Dr. Downs, this case is currently set for trial this month in—November 28th. Will you be engaged in your practice of medicine here in neurology during that time?

A: Yes. With the holidays coming up and we're down one partner from a year ago, our schedules are pretty full and we're booked well past that day.

Q: And would it be a har- —would it be a hardship for you to have to appear at trial and to actually come down to the courthouse?

A: It would be a hardship for the patients scheduled that day, *they'd be put off a month.*"

(Emphasis supplied.)

Defendant contends that plaintiffs were required to make a specific finding that Dr. Downs was not available on the day the deposition was actually offered into evidence, December 20, 1994. Plaintiffs, however, contend that Dr. Downs' statement in her deposition that patients would be "put off a month" if she were to appear in person, creates a clear inference that Dr. Downs had patients scheduled well past December 20, 1995, the day her testimony was presented by videotape and therefore, the requirements of Rule 57.07 have been satisfied. We agree.

■ *Estate of Helmich v. O'Toole,* 731 S.W.2d 474 (Mo.App.1987), supports the proposition that it need not be shown that the witness is unavailable on the specific date of trial. In *Helmich,* appellant alleged there was error in the admission of a videotaped deposition because it had not been shown that the physician was unavailable for trial on the day the deposition was offered. During the deposition in *Helmich,* the following questions were asked of the doctor being deposed:

"Q: And you treat patients at your office?

A: Yes, sir.

Q: And you also treat patients at area hospitals, is that correct?

A: Yes.

Q: Doctor Emerson, if this case about which you are to testify was called to be tried during the day, would you find it impossible to attend the trial of the case?

A: Extremely so."

The appellate court stated, "the testimony in the deposition need not refer to the specific date of trial. Such a requirement would place an almost impossible burden on the proponent of the deposition." *Id.* at 479. The court further stated that the defendants had ample opportunity to cross-examine the witness at the deposition about his unavailability for trial and chose not to do so.

Defendant's Amended Notice of Deposition stated:

"PLEASE TAKE NOTICE that Defendants will take the deposition of Dr. Mary K. Downs by oral examination, commencing at 2:00 p.m. on Wednesday, November 16, 1994, for discovery purposes and for use at trial."

The defendant was fully aware that the plaintiffs were planning to introduce Dr. Downs' deposition into evidence as their own Notice of Deposition acknowledged such. They had ample opportunity to question her as to her unavailability and did not do so.

■ The remainder of defendant's first point on appeal, cites error in the exclusion of answers to interrogatories which defendant contends constitute admissions against interest. The interrogatories in question were originally propounded by General Motors Corporation to plaintiff Laurie Amador. In their original petition, plaintiffs brought suit against General Motors Corporation on theories of design defect, manufacturing defect, and breach of implied warranties. The petition focused on the driver's seat of Laurie Amador's vehicle, which broke on impact. In their answers to interrogatories and requests

for admissions propounded by General Motors, plaintiffs maintained that the driver's seat was defective and thereby contributed to plaintiff Laurie Amador's injuries. However, prior to trial, plaintiffs dismissed their lawsuit as against General Motors. The propounded interrogatories and answers thereto are as follows:

"8. If you allege that the vehicle was defective or in a defective condition at the time it was manufactured or delivered, please state:

(a) In what respect was it in a defective condition, describing in complete detail said defect or defective condition;

(b) How and in what manner did said defect or defective condition cause or contribute to the occurrence;

(c) In what manner you allege this Defendant to be responsible for such defect or defective condition.

ANSWER: Yes.

(a) The 1987 Delta 1988 was defective in that it was designed, manufactured and delivered with a driver's seat that would break under a rear impact from a vehicle traveling 30 miles per hour or less;

(b) The defective driver's seat broke under a rear impact of 30 miles or less causing the injuries to plaintiff Laurie Rachelle as described in plaintiffs' Petition;

(c) Defendant General Motors is responsible for said defective driver's seat in that it designed, manufactured and furnished said seat with the said 19987 (sic) Delta 88.

30. State what injuries you contend Plaintiffs would have received in the absence of the alleged defects Plaintiffs claim existed at the time of the accident.

ANSWER: Plaintiff Laurie Rachelle Amador would not have received the injuries described in plaintiffs' Petition if the defect had not existed. Plaintiff Joseph A. Amador would not have been deprived of the companionship, consortium and services of wife, plaintiff Laurie Rachelle Amador."

At trial, defendant sought to cross-examine the plaintiffs with respect to the aforementioned answers to interrogatories in order to argue "sole cause" in its closing argument or otherwise to show that the injuries in question resulted from the actions of a party other than Lea's Auto; the trial court refused to allow the inquiry.

However, in the context of the facts of this particular case, defendant could not effectively argue "sole cause" because it is apparent that the defect in the automobile chair, alone, could not have caused injuries to Laurie Amador. Rather, the collision was the precipitating factor herein without which there could be no injuries. Nor did defendant seek to introduce evidence of a defective chair in its portion of the case.

■ Case law is clear that there is a difference between statements of fact and legal conclusions. "A superseded pleading is admissible against party in whose behalf it was originally filed if it contains admissions or statements of fact against interest of such party." *Fahy v. Dresser Industries, Inc.*, 740 S.W.2d 635, 642 (Mo. banc 1987). However, "[g]eneral allegations that simply state that plaintiff's damages were caused by some conduct on the part of defendant ... are legal conclusions, not admissions of fact and, as such are not admissible as admissions against interest." *Id.; Anuhco, Inc. v. Westinghouse Credit Corp.*, 883 S.W.2d 910, 930–31 (Mo.App.1994). Laurie Amador's responses stating that the defective seat was responsible for her injuries were at least a mix of legal conclusions and facts, and at most, were legal conclusions. In either event, no attempt was made by defendant to redact the legal from the factual therein, probably because the remaining facts would have been largely irrelevant in the context that would have resulted. It was at the discretion of the trial judge whether or not to allow collateral matters into the trial. The admission of evidence lies within the broad discretion of the trial court. *Harashe v. The Flintkote Co.*, 848 S.W.2d 506 (Mo.App.1993). There was no abuse of discretion by the trial judge. Point denied.

**II.**

In its second point, defendant contends it suffered cumulative prejudicial error when

the trial court overruled several objections made during plaintiffs' closing argument. The statements about which it complains involves insurance, an improper "send a message" argument, and derogatory remarks directed at defense counsel.

■ First, defendant complains that insurance was improperly interjected into the case by plaintiffs' counsel. The transcript reflects several instances from voir dire through closing argument wherein defense counsel made comments and introduced evidence concerning Lea's Auto's small size. There was an emphasis placed on the small size of the company, the fact that it was owned only by a husband and wife who hold every corporate position, fulfill every job, and are the only two stockholders, to wit:

"MR. FISHER: [counsel for Lea's Auto]

Now let me tell you a little bit about my client. It is a corporation consisting of Roger and his wife, the two stockholders, and they hold every position and do every job … they are the two, and only, shareholders…."

During examination of Roger Lea, the president of Lea's Auto, its attorney elicited the following information concerning the size of Lea's Auto, to wit:

"Q. (By Ms. Aiken) Mr. Lea, I think this has been discussed. Lea's Auto Sales & Leasing, it's a corporation?

A. Uh-huh.

Q. Now this corporation, how many people does it consist of?

A. My wife, Anita and myself.

Q. Now you and Anita, you have every title in this corporation?

A. Yeah. I'm president, she's vice president, secretary, reporter, she does it all.

Q. And you and Anita are president and gopher as well, aren't you?

A. Uh-huh.

Q. I mean, you—you two are the whole ball of wax, is that right?

A. If I've got to wash, I've got to wash."

During closing argument the defense counsel stated, "I cannot believe that someone would ask you for money from my client…." Plaintiff's counsel responded by stating during his closing rebuttal that, "there's not one shred of evidence that any judgment or verdict that's paid in this case will have to be paid by his client." However, earlier in the proceedings, the trial judge cautioned defendant about utilizing a plea of poverty. The court warned that such a plea would invite retaliation, although the court indicated that "nothing has been said at this point and there is nothing to rule."

■ The plaintiff does not have the right to flaunt insurance coverage in the jury's face. *Ballinger v. Gascosage Elec. Co-op.*, 788 S.W.2d 506, 513 (Mo. banc 1990), overruled on other grounds by *Zueck v. Oppenheimer Gateway Properties, Inc.*, 809 S.W.2d 384 (Mo. banc 1991). "In ruling on the propriety of final argument, the challenged comment must be interpreted in light of the entire record rather than in isolation". *Kelly by Kelly v. Jackson*, 798 S.W.2d 699, 704 (Mo. banc 1990). The trial court has sound discretion in determining whether closing argument has had a prejudicial effect so as to warrant a mistrial, and its judgment will not be disturbed on appeal unless there is a manifest abuse of discretion. *Richardson v. State Highway & Transportation Comm'n.*, 863 S.W.2d 876, 881 (Mo. banc 1993). We find no manifest abuse of discretion on the part of the trial judge. Subpoint is denied.

■ The defendant also alleges error in plaintiffs' closing argument in that the plaintiffs employed a "send a message" argument and such was improper since no punitive damages were plead. Plaintiffs' counsel stated in their closing that "… car sales companies will listen to your verdict in this case. And by your verdict, you'll be helping other persons in similar situations…."

■ Missouri courts have disapproved of the use of "send a message" arguments in

cases where punitive damages are not sought. *Pierce v. Platte–Clay Elec. Co-op., Inc.,* 769 S.W.2d 769, 779 (Mo. banc 1989). "When the message argument becomes the theme of the entire closing, it constitutes reversible error." *Id.* However, defense counsel did not make a specific objection to such remarks of plaintiffs' counsel. The colloquy went as follows:

"MR. FISHER (counsel for defendant): Your honor, this case doesn't have anything to do with any hypothetical thing in other cases in the future.

MR. OLIVER (*counsel for plaintiffs*): I think it's a reasonable argument under the law and the evidence, Your Honor.

THE COURT: Overruled."

■■■ Generally, failure to object to an argument at the time it is made to a jury results in a waiver of any right to complain about the argument on appeal. *Elfrink v. Burlington Northern Railroad Co.,* 845 S.W.2d 607, 613 (Mo.App.1992). Moreover, a general objection preserves nothing for review, *Connour v. Burlington Northern Railroad Co.,* 889 S.W.2d 138 (Mo.App.1994), and the objection cannot be raised for the first time in a motion for new trial. *Krenski v. Aubuchon,* 841 S.W.2d 721, 728 (Mo.App. 1992).

In either event, the trial court was in the best position to determine the prejudicial effect of plaintiffs' counsel's remarks on the jury and it chose to overrule the objections cited. No request for mistrial by defense counsel was made at the time and no further relief was requested. The trial court acted properly and did not abuse its discretion. See *Pierce,* 769 S.W.2d 769.

■■■ Finally, defendant makes a generalized claim that plaintiffs' counsel, in his closing argument, made several derogatory remarks directed toward defendant's counsel. This Court has reviewed the transcript but finds no specific objections made at trial citing "derogatory" remarks by plaintiffs' counsel during closing arguments. At one point, an objection was lodged by defendant's

counsel that opposing counsel was testifying to facts not in evidence. The trial court ruled at that time that remarks were invited by statements previously made by defendant's counsel. Again, we defer to the trial court's discretion in assessing the derogatory nature of any remarks and any prejudicial effect that they may have had on the jury. (The court has wide latitude in responding to the arguments of opposing counsel.) *Kelly,* 798 S.W.2d at 704. Subpoint is denied.

■■■ Defendant asserts that the cumulative effect of these errors was so prejudicial as to warrant a new trial. However, the trial judge is in the best position to determine the prejudicial effect of the comments that were made and we defer to his judgment on all three areas of alleged error. *Richardson,* 863 S.W.2d at 881. Subpoint is denied.

### III.

■■■ In its third point defendant asserts that the trial court erred in overruling defendant's motions for directed verdict and for judgment notwithstanding the verdict. It claims that the actions of Robert McFall, the 15 year old who drove the car, were a superseding or intervening act (criminal in nature or in fact) that operated to preclude liability on the part of Lea's Auto.

"Where failure to grant a directed verdict for the defendant is the error asserted, we review the evidence presented at trial to determine whether or not the plaintiff introduced substantial evidence that tends to prove the facts essential to plaintiff's recovery."

*Schaffer v. Bess,* 822 S.W.2d 871, 876 (Mo. App.1991).

"In reaching this determination, we review the evidence in the light most favorable to the plaintiff, giving him the benefit of all reasonable inferences, and disregarding the defendant's evidence except as it aids the plaintiff's case ... If reasonable minds can draw different conclusions from the facts, causation questions are for the jury, and a directed verdict is not proper."

*Id.* at 876.

■■■ In ruling on a motion for judgment notwithstanding the verdict (or in the alter-

native, for new trial) "all evidence and inferences therefrom are considered in a light most favorable to the verdict." *Sooter v. Magic Lantern, Inc.,* 771 S.W.2d 359, 362 (Mo.App.1989).

"It is axiomatic that the mere fact that injury follows negligence does not necessarily create liability [citation omitted]. Plaintiff must also prove the negligent conduct amounted to a violation of some duty owed to him and that the conduct was an efficient and proximate cause of his injury."

*Metzger v. Schermesser,* 687 S.W.2d 671, 672 (Mo.App.1985).

"If two or more persons are guilty of consecutive acts of negligence closely related in time, there is a question as to whether the initial act of negligence was the proximate cause of the injury or whether there was an efficient, intervening cause."

*Krause v. U.S. Truck Co., Inc.,* 787 S.W.2d 708, 710 (Mo. banc 1990).

"The practical test of proximate cause is whether the negligence is an efficient cause which sets in motion the chain of circumstances leading to the plaintiff's injuries or damages [citation omitted]. The test is not whether a reasonably prudent person would have foreseen the particular injury [citation omitted]. Instead, the test is whether, after the occurrences, the injury appears to be the reasonable and probable consequence of the act or omission of the defendant. The defendant's negligence need not be the sole cause of the injury. It is sufficient that it be one of the efficient causes thereof, without which the injury would not have occurred. A party is liable if his negligence, combined with the negligence of others, results in injury to another."

*Schaffer,* 822 S.W.2d at 876–77.

The fact that the damage was caused by a criminal act does not end the inquiry. "... [I]f the foreseeable likelihood that a third person may act in a particular manner is one of the hazards which makes a person negligent, such act of a third party, whether innocent, negligent, intentionally tortious or criminal, does not prevent that person from being liable for the harm caused thereby." [citing authority],

*St. John Bank & Trust Co. v. City of St. John,* 679 S.W.2d 399, 402 (Mo.App.1984).

However, "Determination of substantiality and proximity of the causal relationship between negligence and injury is dependent upon the particular facts of each case and it is seldom that one decision controls another."

*Buck v. Union Elec. Co.,* 887 S.W.2d 430, 433 (Mo.App.1994).

"An intervening cause is a new and independent force which so interrupts the chain of events as to become the responsible, direct, proximate and immediate cause of the injury, rendering any prior negligence too remote to operate as the proximate cause." (citation omitted). It may not consist of an act of concurring or contributory negligence. Moreover, it may not be one which is itself a forseeable and natural result of the original negligence.

*Schaffer,* 822 S.W.2d at 877.

Of particular assistance in this inquiry is the RESTATEMENT (SECOND) OF TORTS § 447 (1965) as cited in *Metzger,* 687 S.W.2d 671, 672 (Mo.App.1985):

The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

(c) the intervening act is a normal consequence of a situation created by the

actor's conduct and the manner in which it is done is not extraordinarily negligent.

All three of the alternatives appear to be applicable to the facts of this case.

■ *Thomasson v. Winsett,* 310 S.W.2d 33, 36 (Mo.App.1958) states that in order to charge the owner of the automobile with negligence in entrusting an automobile to an incompetent or inexperienced person, there must be some knowledge of the incompetence or circumstances which would provoke inquiry and investigation by a reasonable person. In *Thomasson,* the owner of the automobile had actual knowledge that the driver was under 16 years of age. In the present case, Lea's Auto had a policy requiring employees to verify that a person who wished to test-drive automobiles was properly licensed. It is apparent that the policy was in place to prevent people who were not properly licensed from driving automobiles owned by Lea's Auto. It was forseeable that a third person would act in the manner which Robert McFall did in obtaining an automobile although not properly licensed to do so. It was forseeable that allowing an unlicensed driver to operate an automobile would cause or create a danger to the public, which is precisely what occurred when Lea's Auto's employee failed to verify McFall's operator's license. *Given the particular facts of this case,* the forseeable likelihood that a third person (McFall) may have acted in a particular manner is one of the hazards which made Lea's Auto's employee negligent, and such act, whether innocent, negligent, intentionally tortious or criminal, did not prevent the employee from being liable from harm caused thereby to the Plaintiffs herein. *See St. John Bank and Trust Co.,* 679 S.W.2d at 403.

In summary, then, Lea's Auto's employee was not the sole cause of the accident that damaged Plaintiff Laurie Amador, but was one of the *efficient causes* thereof (McFall's negligence constitutes another) without which injury to the plaintiffs would not have occurred. Since a party is liable if his negligence, combined with the negligence of others, results in injury, Lea's Auto's employee, hence, Lea's Auto, is liable. *Schaffer,* 822 S.W.2d 871. Point denied.

## IV.

■ For their fourth point on appeal, defendant claims it was error to give Instruction No. 6, a verdict director, to the jury. The Instruction read:

"First, defendant Lea's Auto Sales & Leasing, Inc. permitted Robert McFall to test drive its automobile, and

Second, at the time defendant Lea's permitted Robert McFall to test drive its automobile, Robert McFall was under sixteen years of age, and

Third, at the time defendant Lea's Auto Sales & Leasing, Inc. permitted Robert McFall to test drive its automobile, defendant Lea's knew or should have known of Robert McFall's age, and

Fourth, that in permitting Robert McFall to test drive its automobile, defendant Lea's was thereby negligent, and

Fifth, that the automobile driven by Robert McFall came into collision with the rear of plaintiff Laurie Amador's automobile, and

Sixth, Robert McFall was thereby negligent, and

Seventh, such negligence of Robert McFall directly combined with the negligence of defendant Lea's Auto Sales & Leasing, Inc. to cause damage to plaintiff Laurie Amador."

Appellants claim this instruction was erroneous because it failed to require a finding that McFall was not competent to drive at the time Lea's Auto allowed McFall to test drive the vehicle. Plaintiffs assert that because McFall was under the age of 16, he was incompetent as a matter of law thus no separate finding of incompetence was required. We agree with plaintiffs.

"A person under sixteen years of age must be taken as incompetent [to operate a motor

vehicle] as a matter of law. Therefore, the person who 'knowingly permits' such driving by a person under the age of sixteen is negligent as a matter of law." *Thomasson*, 310 S.W.2d at 36. That being the case there was no need for a jury to make a factual finding that McFall was incompetent. *Johnson v. Pacific Intermountain Express Co.*, 662 S.W.2d 237, 245 (Mo. banc 1983), *cert. denied*, 466 U.S. 973, 104 S.Ct. 2349, 80 L.Ed.2d 822 (1984). ("Only issues of fact which are genuinely in dispute need be submitted to the jury.") *Miller v. Gillespie*, 853 S.W.2d 342 (Mo.App.1993), rehearing, transfer denied.

We find that Plaintiffs' Instruction No. 6 substantially sets out all of the required elements in order to make a claim for negligent entrustment, i.e.:

"(1) Proof that the entrustee was incompetent, inexperienced or reckless; (2) that the entrustor 'knew or had reason to know' of the entrustee's condition or proclivities; (3) that there was an entrustment of the chattel; (4) that the entrustment created an appreciable risk of harm to the plaintiff and a relational duty on the part of the defendant; (5) that the harm to the plaintiff was 'proximately' or 'legally' caused by the negligence of the defendant."

*Evans v. Allen Auto Rental and Truck Leasing, Inc.*, 555 S.W.2d 325 (Mo. banc 1977). Point denied.

### V.

■ Defendant's final point is that the trial court erred in the calculation of damages. Plaintiffs concede this point.[1] Because there is no factual question and the parties agree to the amount of damages, we may reduce the judgment under Rule 84.14. *Dildine v. Frichtel*, 890 S.W.2d 683 (Mo.App. 1994). The jury returned damages in favor of Laurie Amador in the amount of $370,000. It was undisputed at trial that advance pay-

ments had been made to Laurie Amador in the amount $3,540.42. In calculating the damages, the trial court did not subtract these advance payments from the jury award prior to calculating prejudgment interest due under § 408.040, RSMo 1994. Therefore, the judgment entered in favor of Laurie Amador should be for $366,459.58, plus prejudgment interest of $71,022.32.

■ Joseph Amador was awarded $5,000 for loss of consortium. The trial court also awarded prejudgment interest on this amount. Although we are not privy to the actual terms of the offer of settlement in question, we glean from the judgment of the trial court and the respective briefs of the parties that there was no specific demand made relative to settling Joseph Amador's claim. Therefore, Joseph Amador is not entitled to prejudgment interest under § 408.040 RSMo 1994. *Chambers By Abel v. Rice*, 858 S.W.2d 230, 233 (Mo.App.S.D.1993); *Lester v. Sayles*, 850 S.W.2d 858, 873 (Mo. banc 1993); *Brown v. Donham*, 900 S.W.2d 630, 633 (Mo. banc 1995).

The judgment of the trial court is affirmed, except as to the amount of damages which is modified as follows: plaintiff Laurie Amador is awarded the amount of $366,459.58, plus prejudgment interest of $71,022.32, and plaintiff Joseph Amador is awarded the amount of $5,000.00. The case is remanded for purposes of entry of judgment consistent with the Court's opinion herein.

SHRUM, C.J., and PREWITT, J., concur.

---

1. Where a statement of fact is asserted in one party's brief and conceded to be true in the adversary's brief, we may consider it as though it appears in the record. *Nastasio v. Cinnamon*, 295 S.W.2d 117, 119[1] (Mo.1956); *Thornbury v. Morris Oil Co., Inc.*, 846 S.W.2d 238, 239[1] n. 2 (Mo.App.1993).