Scott GIFFORD, et al., Appellants,

v.

Michael L. GEOSLING,
et al., Respondents.

No. WD 53298.

Missouri Court of Appeals,
Western District.

July 15, 1997.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 2, 1997.

Application to Transfer Denied
Oct. 21, 1997.

William S. Lewis, Trenton, for Appellants.

Brent John Mayberry, Kirksville, for Respondents.

Before ULRICH, C.J., P.J., and LAURA DENVIR STITH and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

This is an appeal from the judgment of the Circuit Court of Sullivan County denying appellants' petition for recission of certain real estate deeds and for a permanent injunction. The appeal involves a conveyance by appellants, D.A. and Mary Gifford (D.A. and Mary), husband and wife, of approximately 160 acres of land to respondent Michael Geosling (Michael), who later sold a portion to his brother, respondent Leamon Geosling (Leamon).

On appeal, appellants make five claims. In Point I, they allege that the trial court erred in failing to rescind the deeds because D.A. was mentally incompetent at the time the deeds were executed by him. Because appellants' Points II, III, IV and V do not comply with Rule 84.04(d), they are dismissed.

We reverse and remand in part and dismiss in part.

### Facts

In 1960, D.A. and Mary purchased a 160–acre tract of land [1] in Sullivan County. From February 3, 1995, until the time of trial, D.A. had resided in a health care facility, after suffering a stroke in January, 1995. On May 8, 1995, Michael approached Scott Gifford (Scott), who was handling the finances of his parents, about purchasing the land.

---

1. The location of the land is as follows: The S½ SE 1/4 of Section 36, Township 64, Range 19 and the N½ NE fractional of 1/4 of Section 1, Township 63, Range 19 in Sullivan County, Missouri.

Twice on May 12, 1995, Mary and a notary public went to the nursing home where D.A. was living. They had him sign a durable power of attorney that empowered Mary to transact business for him, and executed a warranty and quit-claim deed for the property in question. Although D.A. informed the notary that he understood what he was signing on both occasions, evidence was presented at trial indicating that at that time, he was mentally incompetent. A guardianship was established for D.A. on February 1, 1996.

Alleging that respondents had wrongfully attempted to remove them from the property through intimidation and harassment, appellants filed for a temporary restraining order (TRO) and preliminary injunction on August 28, 1995. The court entered the TRO on that day, and entered the preliminary injunction on September 18, 1995. On September 22, 1995, appellants filed their first amended petition with five counts: (1) recission of deed; (2) specific performance; (3) damages for fraudulent misrepresentation; (4) quiet title; (5) constructive trust. On June 24, 1996, arson partially destroyed the house on the property. At a hearing on July 17, 1996, appellants made a motion for continuance to gather evidence about the fire, which the trial court overruled, but the court granted appellants' motion to amend their pleadings to include a count for unjust enrichment. At trial, which took place from July 30 to 31, 1996, appellants attempted to submit their second amended petition, and the trial court refused. On September 3, 1996, the trial court entered its judgment as to the permanent injunction and appellants' petition. The court denied the permanent injunction, dissolved the preliminary injunction and denied appellants' petition on all counts. Appellants filed their appeal on September 13, 1996.

**Failure to Comply with Rule 84.04(d)**

■ We first note that appellants' brief, as to Points II, III, IV and V, does not comply with Rule 84.04(d), which provides in pertinent part: "The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous ...." (emphasis added). Failure to comply with Rule 84.04(d) preserves nothing for appellate review. *Smith v. Independence Tax Increment Fin. Comm'n,* 919 S.W.2d 292, 294 (Mo.App.1996).

■ Here, appellants' Points II through V simply state the rulings of law claimed to be erroneous, but fail to state wherein and why the rulings were erroneous. The appropriate remedy for failure to comply with Rule 84.04(d) is dismissal. *Jefferson v. Bick,* 872 S.W.2d 115, 118 (Mo.App.1994). As to appellants' Point I, although not a model of draftsmanship, we find that when it is read together with the argument thereon, it is sufficient to allow appellate review under Rule 84.04(d).

**I.**

**Standard of Review**

■ Our review here is governed by *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). *Maudlin v. Lang,* 867 S.W.2d 514, 517 (Mo. banc 1993). The judgment of the trial court will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* A court will set aside a judgment as "against the weight of the evidence" when it has a

> firm belief that the judgment is wrong. Weight of the evidence refers to weight in probative value, not quantity or the amount of evidence. The weight of evidence is not determined by mathematics, but on its effect in inducing belief.

*Silver Dollar City v. Kitsmiller Constr., Inc.,* 931 S.W.2d 909, 918 n. 18 (Mo.App.1996). Conflicting evidence is resolved in favor of the trial court's determination, as we defer to the trial court's assessment of witness credibility. *Stewart v. Stewart,* 905 S.W.2d 114, 116 (Mo.App.1995). The court is entitled to believe all, none or only part of testimony of any witness. *Community Bank of Chillicothe, Mo. v. Campbell,* 870 S.W.2d 838, 841 (Mo.App.1993). We accept as true "all evidence favorable to the prevailing party and all reasonable inferences drawn from it, disregarding all contradictory evidence." *Id.* In a court-tried case, where there are no findings of fact or conclusions of law, all issues are to be deemed found in accordance with

the result reached and the judgment affirmed if it could be rendered on any reasonable theory. *Law v. City of Maryville,* 933 S.W.2d 873, 878 (Mo.App.1996).

### Discussion

In appellants' Point I, they allege that the trial court erred in failing to rescind the warranty and quit-claim deeds in question, because the greater weight of the evidence demonstrates that D.A. was mentally incompetent at the time he executed the deeds, thus rendering the deeds null and void. We agree.

Appellants correctly note that when property is held as a "tenancy in the entirety," each spouse is "seized of the whole or entirety and not of a share or divisible part." *Wehrheim v. Brent,* 894 S.W.2d 227, 228–29 (Mo.App.1995). Thus, the participation of both D.A. and Mary was necessary here to validly convey the property in question. *Id.* If, as appellants allege, D.A. was not mentally competent at the time of the execution of the deeds, Mary's valid execution of the deeds would not alone validate the conveyance. *Id.*

An action to set aside a deed is a matter of "equitable cognizance," and relief will only be granted on the basis of "clear and convincing evidence." *Estate of Oden v. Oden,* 905 S.W.2d 914, 919 (Mo.App.1995). "The burden is upon those who seek to have the deed set aside to establish that, at the time of its execution, the grantor lacked sufficient mental capacity." *Estate of Helmich v. O'Toole,* 731 S.W.2d 474, 478 (Mo.App. 1987). The grantor's mental capacity on the date of execution may be demonstrated with evidence of the grantor's condition before and after the execution. *Id.* The issue to be determined is whether appellant had the mental capacity at the time of execution of the deeds sufficient to understand the nature of the transaction, the extent of his property and the ability to recognize the objects of his bounty. *Id.* "Instances of illness, imperfect memory, forgetfulness, physical and intellectual weaknesses associated with old age, and mental confusion are generally not sufficient evidence to invalidate a deed." *Thurmon v. Ludy,* 914 S.W.2d 32, 34 (Mo.App.1995).

The strongest evidence appellants presented that D.A. was not mentally competent to execute the deeds came from two doctors. Both testified that D.A.'s condition was not simply mental confusion resulting from old age, *id.,* based on contact with him before and after the execution of the deeds on May 12, 1995. *Helmich,* 731 S.W.2d at 478. Marsha Fowler, M.D., and Henry Wisdom, M.D., testified that based on a reasonable degree of medical certainty, D.A. was not competent to handle his business affairs on May 12, 1995.

Dr. Wisdom testified in deposition that the stroke that D.A. suffered in February, 1995, lead to multi-infarct dementia. He indicated that he first observed D.A. during the month of April, 1995, as D.A. was placed in a music therapy group Dr. Wisdom directed. Although Dr. Wisdom did not examine D.A. during those therapy sessions, he noted at that time that D.A. was suffering from dementia, based on D.A.'s level of confusion. Dr. Wisdom then examined D.A. on June 29, 1995. He stated that his findings in June were consistent with his initial observations in April, with the exception that D.A. did not display any signs of delusionary behavior in April, but did in June.

Dr. Fowler stated that she believed D.A. was debilitated by dementia as early as the spring of 1994, when she gave him a series of general physical exams. She defined dementia as an "inability to reason and to exercise appropriate judgment and to assimilate information accurately and respond appropriately to that information in a consistent manner." She stated that dementia is a progressive condition, as did Dr. Wisdom. She noted that when she had contact with D.A. just before trial, in June of 1996, his condition had deteriorated significantly since 1994. She testified that at that time, his long-term memory was "patchy" and short-term memory was "practically zero."

On the issue of D.A.'s competency, respondents presented only one witness, Audrey Anderson (Anderson), who was the notary public for the durable power of attorney and the deeds. Anderson testified that when she was there on her first visit that day, when she brought the durable power of attorney

allowing Mary to transact business for D.A., she was with him from ten to fifteen minutes. At that time, he "seemed" to understand what he was signing. Anderson testified that before asking him to sign the deeds later that day, she explained that he and his wife were deeding property to Michael. When asked, he stated that he understood what he was signing. However, he did not further communicate with Anderson beyond answering "yes" to her questions in the approximately five to fifteen minutes she was with him. Anderson admitted in her testimony that she was not qualified to say if he was mentally alert or was mentally competent to execute the deeds in question.

■ "The rationale for notarization is to avoid the risk the signature will not be authentic." *Herrero v. Cummins Mid-America, Inc.*, 930 S.W.2d 18, 22 (Mo.App.1996). Here, the acknowledgment clauses on both the warranty deed and the quit-claim deed state that the instruments were executed by the signors' "free act." We have held that prima facie evidence of the facts recited in a deed is established by a certificate of acknowledgment. *McDonald v. Amoret Farm Supply*, 634 S.W.2d 255, 257 n. 1 (Mo.App. 1982). Therefore, Anderson's acknowledgment established that D.A. actually signed the deeds and his signature was the result of a free act. However, it does not establish D.A.'s mental competency at that time of his execution of the deeds.

The trial court was obviously not persuaded by the testimony Mary gave at trial concerning D.A.'s competency. It was logical for the trial court to infer from her silence at the time D.A. executed the deeds that she believed he was, in fact, competent. However, this would carry little weight.

■ Weighing the testimony of the two doctors against the testimony of Anderson, a lay witness who only spoke with D.A. briefly, we find the clear weight of the evidence supports a finding that D.A. lacked sufficient mental capacity to execute the deeds in question. Therefore, we are left with the firm belief that the trial court's judgment, in failing to rescind the deeds, was wrong, *Silver Dollar City*, 931 S.W.2d at 919 n. 18, as

D.A.'s incompetency renders their execution a nullity. *Helmich*, 731 S.W.2d at 478.

### Conclusion

We reverse the judgment of the trial court denying appellants' petition to rescind the warranty and quit-claim deeds and remand the cause to enter judgment for appellants on their petition. As to appellants' remaining points on appeal, we dismiss for failure to comply with Rule 84.04(d).

All concur.